THE STATE EX REL. RAY BEAMAN HORTON v. W. A. CLARK ET AL., Composing STATE BOARD OF HEALTH, Appellants.—9 S. W. (2d) 635.

Court en Banc, October 2, 1928.

*North T. Gentry,* Attorney-General, and *A. B. Lovan,* Assistant Attorney-General, for appellants; *J. Henry Caruthers* of counsel.

1194

*Fred W. Coon* and *C. S. Walden* for respondent.

ATWOOD, J.—This is an appeal from a judgment of the Circuit Court of the City of St. Louis quashing the proceedings of the State Board of Health brought there for review by writ of certiorari in the matter of a complaint filed against relator, Ray Beaman Horton, and ordering said board to restore his license to practice medicine and surgery in the State of Missouri.

Respondent insists that no appeal lies to the Supreme Court from said judgment of the Circuit Court of the City of St. Louis. While we have held that the State Board of Health is not a court or judicial body (State ex rel. v. Goodier, 195 Mo. 551), yet when relator availed himself of the right of review given by Section 7336, Revised Statutes 1919, and filed his petition in the Circuit Court of the City of St. Louis for a writ of certiorari against the members of the State Board of Health, that proceeding was a "case" within the meaning of Section 12, Article VI, of the Constitution, and as respondents are state officers within the meaning of said section an appeal from the decision of the trial court in the certiorari proceeding properly goes to the Supreme Court. [Section 5, Amendment of 1884 to Article VI of the Constitution; State ex rel. v. Springer, 134 Mo. 212, l. c. 221; State ex rel. v. Nortoni, 201 Mo. l. c. 26, quoting from State ex rel. Blakemore v. Rombauer, 101 Mo. 499; Farber v. Shot, 304 Mo. 523, l. c. 528, 533.]

Preliminary to further consideration of this appeal we shall here briefly summarize the proceedings prior thereto. The original complaint was filed with the State Board of Health June 9, 1925, Horton was duly notified, and a hearing was set for September 17, 1925. Thereupon the said Horton filed a petition for injunction against said State Board of Health in the Circuit Court of Cole County, Missouri. A temporary restraining order was issued which was thereafter dissolved and judgment was finally rendered in said court in favor of the State Board of Health. Petitioner appealed therefrom to the

Supreme Court of this State where the judgment was affirmed. [Horton v. Clark, 316 Mo. 770, 293 S. W. 362.] Thereafter on March 22, 1927, the following amended complaint was filed against the said Horton in the office of the secretary of the State Board of Health of Missouri:

" 'State of Missouri, \
County of Cole, } ss.

BEFORE THE STATE BOARD OF HEALTH OF THE STATE OF MISSOURI.

Comes now the undersigned, Ross Hopkins, and for his amended complaint alleges and charges that one Ray Beaman Horton has been for sometime and is now engaged in the practice of medicine and surgery in the State of Missouri, by virtue of a license or certificate granted to him by the Missouri State Board of Health under date of October 18, 1922; that said license or certificate so granted was secured by false and fraudulent statements and representations made by said Ray Beaman Horton to the Missouri State Board of Health in that said Ray Beaman Horton falsely stated under oath in his application to the State Board of Health for a license to practice medicine and surgery in this State, dated August 29, 1922, among other things, as follows, to-wit:

" '9. Preliminary Education. My preliminary qualifications are as follows:

" 'Graduation from the Purdy High School, Purdy, Missouri. May 24th, 1916.'

"That said Ray Beaman Horton, in said application for a license to practice medicine, falsely and fraudulently submitted to said Board of Health a certificate of preliminary education; that such certificate of preliminary education is in words and figures as follows:

" 'CERTIFICATE OF PRELIMINARY EDUCATION.

" 'This certificate to be made out, signed and sworn to by the executive officer of the Institution which conferred upon the applicant his preliminary education. If examination was passed before a county school commissioner, that officer shall name the branches in which applicant was examined, the grades made in each branch, and the date on which the examination was conducted, which must have been prior to the beginning of the study of medicine.

" 'This is to certify that Ray Beaman Horton graduated from the Purdy High School at Purdy, Mo., May 24, 1916, and received the following grades: .

1912-13.

" 'Algebra one 85% —English one 93% —Latin 92% —Ancient History 90%.

1913-14.

" 'Geometry one 91%—English two 94%—Latin two 89%—Med. and Mod. History 91%.

1914-15.

" 'Agriculture 86%—Algebra two 89%—English three 92%—English History 84%.

1915-16.

" 'Physics 88%—Geometry two 92%—English four 89%—American History 90%.

" ' (Signed) Jesse W. McCraw, Pres. Board of Ed.
    Executive Officer of School or College, or County School
    Commissioner.

" 'State of Missouri, ⎱
         ⎰ss.
 County of Barry, ⎰

" 'Subscribed and sworn to before me this 26th day of August, 1922.

           " 'A. J. CLEVENGER
" ' (SEAL)            Notary Public.
" 'My commission expires Jan. 6, 1925.'

"That the said Ray Beaman Horton further stated in his said application for a license to practice medicine that he attended the St. Louis College of Physicians and Surgeons from October 5, 1918, to May 15, 1919; from October 1, 1919, to June 2, 1920; from October 10, 1920, to May 2, 1921; and the Kansas City College of Medicine and Surgery from September, 1921, to May, 1922.

"Whereas in truth and in fact the said Ray Beaman Horton did not graduate from the Purdy High School, Purdy, Missouri; and said certificate of preliminary education, so exhibited to the State Board of Health was falsely concocted to show that said Ray Beaman Horton was a graduate from said Purdy High School, when in truth he was not such graduate; and whereas in truth and in fact the said Ray Beaman Horton did not continuously and regularly attend the St. Louis College of Physicians and Surgeons from October 5, 1918, to May 15, 1919; nor from October 1, 1919, to June 2, 1920, as aforesaid; all of which the said Ray Beaman Horton then and there well knew.

          "ROSS HOPKINS, M. D.
"March 22, 1927.

       "Filed March 22nd, '27,
       "STATE BOARD OF HEALTH
        "JAMES STEWART, Sec'ty."

On April 23, 1927, the said Horton was duly notified of the filing of this amended complaint, served with a copy thereof and notified to appear before said board for a hearing thereon May 25, 1927.

Pursuant to said notice the said Horton appeared in person and by counsel before said Board of Health, a hearing upon said amended complaint was had, and on May 27, 1927, the said State Board of Health revoked his license to practice medicine and surgery in the State of Missouri. Thereafter, on June 11, 1927, relator filed his petition in the Circuit Court of the City of St. Louis as aforesaid. The writ was issued and respondents filed return tendering a true and correct copy of the record of the proceedings and all the evidence had before the State Board of Health in said matter. Relator thereupon filed his motion to quash the proceedings of the State Board of Health in said matter, which motion was by the court sustained and said board was ordered to restore relator's license to practice medicine in the State of Missouri. From the judgment rendered respondents duly appealed.

Authority for the issuance of a writ of certiorari against the members of the State Board of Health thus appears in Section 7336, Revised Statutes 1919:

"Any person whose license has been or shall be revoked by the board shall have the right to have the proceedings of said board revoking his license and all the evidence therein reviewed, on a writ of certiorari, by the circuit court of the county in which said board held its session when said license was revoked. Said writ shall issue upon the petition of the person whose license shall have been revoked to said court or to the clerk thereof in vacation at any time within ninety days after such revocation, and shall command the said board and the secretary thereof to certify to said court the record and proceedings of said board, and a complete transcript thereof, and of all the evidence therein pertaining to the revocation of said license. The petitioner for the writ of certiorari shall set forth the rights of the petitioner and the injuries complained of by him and shall be verified by him."

A common-law writ of certiorari only brings up the record and can only reach defects or errors in the proceedings of the tribunal to which it is issued which appear upon the face of the record and go to the jurisdiction of that tribunal. The evidence is no part of the record and it is not the office of such writ to bring up the evidence for review. [Hann. & St. Joe Railroad Co. v. State Board of Equalization, 64 Mo. 294, 1. c. 308.] However, the writ of certiorari contemplated by above Section 7336 is somewhat broader than the common-law writ, for its specifically provides that the writ "shall command the said board and the secretary thereof to certify to said court the record and proceedings of said board, and a complete transcript thereof, and of all the evidence therein pertaining to the revocation of said license." The broad scope of this statutory proceeding is further indicated by the provision that "any person whose license has been or

shall be revoked by the board shall have the right to have the proceedings of said board revoking his license and all the evidence therein reviewed, on a writ of certiorari, by the circuit court of the county in which said board held its session when said license was revoked." On appeal from a judgment of the circuit court upon such a review we had held this statute penal, and ruled that the acts for the commission of which the valuable privilege or right to practice medicine and surgery may be taken away must come within both the letter and the spirit of the law. [State ex rel. v. Robinson, 253 Mo. 271, l. c. 285.] Nevertheless, it is a wholesome and well-recognized rule of law that powers conferred upon boards of health to enable them effectually to perform their important functions in safeguarding the public health should receive a liberal construction. [29 C. J. 248, sec. 30; also, Sec. 6, p. 243.] While boards of this character cannot act arbitrarily, or without substantial evidence (State ex rel. v. Adcock, 206 Mo. 550, l. c. 558), yet when any act, requiring the exercise of judgment and the employment of discretion, is within the scope of the exercise of a reasonable discretion, it will not be interfered with. [State ex rel. Granville v. Gregory, 83 Mo. 123, l. c. 136.] Section 7336, supra, empowers the State Board of Health, for causes therein specified, to revoke a license to practice medicine after giving the accused an opportunity to be heard in his defense before the board as therein provided. Relative to such a hearing and how the proceedings therein should be regarded on review in the circuit court, we thus spoke in State ex rel. v. Goodier, 195 Mo. 551, l. c. 559:

"The State Board of Health is not a court, is not a judicial tribunal; it can issue no writ, it can try no case, render no judgment; it is merely a governmental agency, exercising ministerial functions; it may investigate and satisfy itself from such sources of information as may be attainable as to the truth or falsity of charges of misconduct against one holding one of its certificates, but its investigation does not take on the form or character of a judicial trial. The law does not contemplate that the technical rules of evidence applicable to a judicial trial will be strictly followed or that compulsory attendance of witnesses will be made. It contemplates that a plain, honest, common sense investigation shall be made, with good faith and as thorough as may be with the light of such evidence on either side as is obtainable without process and with the means at hand; much like the investigation that fair-minded intelligent men would make in their own business concerning the alleged misconduct of one of their employees, with this difference only, that the board cannot revoke the license except for cause and after the accused has had an opportunity to be heard."

From what we have already said it follows that in the consideration of this appeal we are not limited to the question of "the juris-

diction of the tribunal (in this instance the State Board of Health) whose proceedings are sought to be reviewed by certiorari," as now urged by respondent. However, we shall follow the usual appellate practice considering only the errors which are here presented and urged and specifically pointed out, and confining our review to matters or objections urged below in the certiorari proceeding. [11 C. J. 221, sec. 407.]

In their motion for a new trial in the circuit court and their assignment of errors presented here appellants insist that "the court erred, in view of the whole record, in quashing the proceedings of the board and ordering the board to restore relator's license to practice medicine in Missouri." As the sufficiency of relator's petition in the circuit court was in nowise challenged and the case there went off on his motion to quash we look to that motion for relator's objections to the proceedings before the board and for the matters raised and considered in the circuit court. The grounds of this motion were therein stated as follows:

"First, that the said respondents, and especially two members of said board, namely Dr. James Stewart and Dr. H. L. Kerr, were prejudiced and biased against relator and could not and did not give to relator a fair and impartial trial at said hearing before said board, as shown by the record before said board from pages 19 to 30 of said record.

"Second, because said State Board of Health erred in refusing to allow complainant to introduce in evidence the records of said State Board of Health, showing that the said State Board of Health during the years 1921, 1922 and 1923, admitted applicants from the Kansas City College of Medicine and Surgery to take the examination to practice medicine and to license such applicants to practice medicine, as shown by the record before said board at pages 305 to 313.

"Third, because the said respondents erred in allowing complainant in said hearing before them, to introduce evidence over the objection of relator, that relator had taken money from L. C. Schneider, E. C. Teubel, B. T. Coglazier, which evidence was immaterial and irrelevant and did not tend to prove or disprove any issue in the hearing before said respondents, and was not charged in the complaint filed before said respondents, and which evidence was highly prejudicial against relator, and for such reasons he was not afforded a fair and impartial trial, all of which is shown in the record beginning at page 586 to 642, inclusive.

"Fourth, because said respondents erred in allowing said complainant, in the hearing before them, to amend said complaint by adding new and additional charges over the objection of relator, and

which did not give to relator twenty days' notice as required by the statutes, on all charges preferred against him, and which was a surprise to relator and did not afford him an opportunity to meet the issues of said amended complaint as shown by the record on pages 519 and 520.

"Fifth, for the reason that all of the testimony, with the exception of the last two hundred pages, was introduced in support of the original complaint as found on page 35 of the record, when said complaint was abandoned by the amendment of said complaint, as appears on page 520, and all of said testimony was introduced for the purpose of establishing a complaint which was subsequently abandoned.

"Sixth, because relator proved in said hearing before said State Board of Health, that he was a graduate of the Kansas City College of Medicine and Surgery, and that in the year 1922 when he was licensed by said State Board of Health to practice medicine and surgery in the State of Missouri, the said Kansas City College of Medicine and Surgery was a college complying in all respects with the law governing and regulating such schools at such time, and that the law did not require any further proof of relator, except that he was a graduate of such school, and any statement that relator made in his application that he attended the St. Louis College of Physicians and Surgeons if false, which is denied by relator, was not fraudulent because it was immaterial and irrelevant and could not be relied upon by said board, and was not charged or shown to be relied upon by said board, all of which is shown in the record, pages 475 to 570, inclusive.

"Seventh, because relator proved conclusively that he was a graduate of the Purdy High School at Purdy, Missouri, and that he had at said institution sixteen units of credit, which is the equivalent of graduation of an accredited high school in the State of Missouri, as shown by the testimony of Merle Neville Ross, beginning at page 275 of said record, and the affidavit of Albert Mott at page 231 of said record, all of which is shown conclusively and without contradiction that relator was a graduate of said school and had sixteen units of credit in said school, which was an equivalent of high school education and which was all that was required by law of relator.

"Eighth, because respondents erred in overruling the motion of relator to make the charges in said complaint, pending before them, more definite and certain, as shown on page 41 of the record.

"Ninth, because the verdict and judgment of the court was against the weight of the creditable evidence.

"Tenth, because the order made by said board is contrary to the laws and facts in said hearing before them.

"Eleventh, because the action of the board in revoking relator's license to practice medicine in the State of Missouri was arbitrary, erroneous, unreasonable and unjust and without authority and jurisdiction.

"12. Because the State Board of Health erred in the hearing before them in admitting incompetent, immaterial and irrelevant testimony over the objection of relator on behalf of complainant in said hearing before them, as shown all through the record of said hearing.

"13. Because the court erred in excluding competent, relevant and material evidence on behalf of relator in said hearing before them, as shown all through the record of said hearing.

"14. Because said respondents erred in admitting testimony of Mr. E. H. Riske on pages 461 and 462 of the record and erred in admittance of complainant's Exhibits Nos. 20, 21 and 22, as shown on page 461 of the record before the State Board of Health.

"15. The statements in the application of Dr. Horton to the State Board of Health for license to practice medicine in Missouri, that he attended the St. Louis College of Physicians and Surgeons during the years 1918-1919, 1919-1920, 1920-1921, if false, is not a fraudulent statement, and is not charged in the application to have been relied upon by the board, nor shown by any evidence in the record that the board relied upon such statements."

The record before us discloses that six of the seven members constituting the State Board of Health were present at the hearing and by their unanimous vote relator was found guilty as charged in the complaint and his license revoked. Under Section 7336, Revised Statutes 1919, a majority, consisting of four members of the board so voting and exclusive of the two members here objected to, would have been sufficient. However, we have carefully examined the part of the record referred to in relator's ground first stated and find no basis for relator's complaint.

Relator's second ground is also without merit because the proof offered was irrelevant and immaterial, the complaint charging false and fraudulent statements by relator in connection with his attendance at the St. Louis College of Physicians and Surgeons and not in connection with his attendance at or graduation from the Kansas City College of Medicine and Surgery.

At the hearing before the State Board of Health, for the alleged purpose of affecting his credibility as a witness, relator was asked whether or not on specific occasions he had accepted money from certain individuals on the representation that he could and would influence the State Board of Health to grant them licenses to practice medicine. When relator denied that

he had ever done anything of the kind, still for the alleged purpose of affecting his credibility as a witness and under the head of "Complainants' Evidence in Rebuttal," he was confronted with the individuals named who testified that he did receive money from them at definite times and places on such representations. Relator's third ground is directed to this action of the board. The introduction of this testimony was not a proper method of impeachment, nor was it properly matter in rebuttal. A witness may, for the purpose of impeachment, be asked and compelled to answer whether he has committed particular wrongful or immoral acts (3 Ency. Evidence 760; Carp v. Queen Ins. Co., 104 Mo. App. 502; State v. Hack, 118 Mo. 92), subject to his personal privilege and right to refuse to answer incriminating questions, even though such facts or acts may be irrelevant and collateral to the principal controversy or issues involved in the case (40 Cyc. 2616); but if a witness is asked as to some shameful act, for the purpose of discrediting him, those asking the question are concluded by the answer, except as to a conviction of crime, and the court will not go into the collateral issue which would otherwise be presented. [Muller v. St. Louis Hospital Assn., 5 Mo. App. 390, l. c. 402, opinion approved in Muller v. St. Louis Hospital Association, 73 Mo. 242; 40 Cyc. 2627.] However, if aside from this evidence which must be excluded there is substantial admissible evidence supporting the action of the State Board of Health its action should not be disturbed.

In the course of the hearing before the Board complainant was permitted to amend his complaint by inserting the following before the words "as aforesaid" in the next to the last line: "from October 10, 1920, to May 2, 1921." In relator's fourth ground it is urged that by reason of this amendment he was not given twenty days' notice of all charges preferred against him as required by statute and that he was thereby surprised and not afforded an opportunity to meet the issues presented in said amended complaint. Relator was evidently not surprised by this amendment for his counsel in his opening statement at the hearing said (italics ours): "The evidence will further show that he attended the St. Louis College of Physicians and Surgeons during the years 1918, 1919 and 1920, *and 1920 and 1921.* That will be shown by the records I think, and by teachers and students out there from that institution." Furthermore, the amendment was not made until after complainant had introduced evidence, unobjected to by relator, that he did not attend said school from October 10, 1920, to May 2, 1921, and after relator had introduced evidence to the contrary. In such circumstances the amendment was in effect made conforming the pleading or complaint to the facts proved and

did not change substantially the claim or defense. Such is permissible under Section 1274, Revised Statutes 1919. We find nothing in the record indicating that the other charges contained in the complaint when it was amended were ever abandoned. Hence, relator's fifth ground is without merit.

In relator's sixth ground it is urged that his representations as to his attendance at the St. Louis College of Physicians and Surgeons, even if false, were not fraudulent, because not material. In Horton v. Clark, 316 Mo. 770, 293 S. W. 364-5, we thus referred to such representations and pointedly held that they were material:

"The statute requires as one of the preliminary qualifications for the practice of medicine that the applicant shall have received 'a diploma from some medical college of four years' requirements;' and the statements just referred to were evidently made for the purpose of establishing that the diploma exhibited by appellant was that of a school of four years' requirements. The materiality of those statements is, therefore, apparent. It is argued, however, that attendance at a medical college for any specific length of time is not required; the statute is plainly to the contrary. The movements that have been on foot for several years to raise the standards of attainment of practitioners of both law and medicine and the progress made therein are matters of common knowledge. In the light of that knowledge, the meaning of the qualifying phrase, 'of four years' requirements,' seems to be unmistakable. As is well known, one can, by the process of "cramming,' or by the aid of a skillful coach, successfully pass an examination upon subjects of which he has no real knowledge. One of unusual endowment may, no doubt, be able to acquire the theory of medicine in much less time than four years, but that will not suffice to make him a competent practitioner.

"It requires time for the knowledge derived from text-books and lectures to be organized and appropriated by the student in such fashion that he can make practical application of it. And the statute evidently contemplates that this process shall take place under the guidance and direction of competent instructors. We think there can be no doubt, therefore, that by the words, 'medical college of four years' requirements,' the Legislature meant a college which requires its students, as a condition of graduation, to attend its sessions continuously and regularly for and during a full term of four years, barring, of course, reasonable vacation periods."

In the light of the foregoing we discover no merit in the sixth ground of relator's motion to quash. Not only were the representations material, but as we have thus defined a "medical college of four years' requirements" there was substantial evidence before the board that they were both false and fraudulent.

In relator's seventh ground it is said that it was "shown conclusively and without contradiction" that relator was a graduate of the Purdy High School with sixteen units of credit. This statement is obviously not borne out by the record. The deposition of Merle Neville Ross, taken at the instance of relator in Chicago, Illinois, May 14, 1927, shows that she was principal of the Purdy High School in 1915-16; that Ray B. Horton attended a part of that year as a special student; that he graduated and a diploma was issued to him, she believing that she signed it along with Albert Mott who was superintendent of the Purdy High School at that time; that relator took no work under her, but she thought Mr. Mott mentioned to her that he was giving him a special examination, although she did not remember whether she had ever seen the permanent record of his grades, special examination and graduation; that Mr. Mott had charge of the keeping of these permanent records; that all diplomas bore the signatures of the secretary and the president of the board of education. Without in any way conforming to the statutory method of procuring evidence by deposition counsel for relator at the hearing before the board on May 25, 1927, produced the *ex parte* affidavit of Albert Mott, given in Pope County, Arkansas, on May 18, 1927, wherein affiant stated that during the years 1914 to 1919, inclusive, he was superintendent of the Purdy High School; that Ray B. Horton "was graduated as a special graduate on May 24, 1916, with a credit of sixteen units of high school work;" that his diploma of graduation, showing a credit of sixteen units of work in the high school at Purdy, Missouri, was issued and signed by affiant as superintendent, by Merle Neville as principal, and by the board of education of Purdy, Missouri; that a copy of relator's record in the Purdy High School, as it appears in the permanent record of said school, was thereto attached and marked Exhibit A. The record of the proceedings before the State Board of Health further discloses that some two years previous, when relator's record in the Purdy High School was first questioned in this matter, the school board at Purdy, through its secretary, requested this Mr. Mott, who was then located at Augusta, Arkansas, to inform the board whether he had given relator the special examination he claimed had been given him on correspondence work and whether he had made out the record, copy of which was with said request enclosed. In reply Mr. Mott declined to give the information, stating that he would "not attempt to prove or disprove anything." Relator, testifying in his own behalf near the close of the hearing, said that he graduated from the Purdy High School in 1916 with sixteen units of credit and received a diploma or certificate of graduation. Under the statute then in force, Section 7332, Laws 1921, page 472,

the only evidence receivable by the State Board of Health as to the preliminary qualifications of an applicant for license to practice medicine was "a certificate of graduation from an accredited high school or its equivalent or state normal school, college university or academy." For reasons best known to himself and not disclosed at the hearing relator apparently did not present to the board his diploma or certificate of graduation from the Purdy High School, but relied upon establishing its equivalent by filing with his application on August 29, 1922, a "Certificate of Preliminary Education" signed and sworn to by the president of the board of education purporting to set forth the fact that relator graduated from the Purdy High School at Purdy, Missouri, May 24, 1916, and his grades in sixteen subjects covering a period of four years. Without some evidence of its authentication or approval by the superintendent or executive officer of the school this paper could hardly be regarded as the equivalent of a "certificate of graduation," and from the otherwise unexplained presence in the same file of a paper purporting to be a copy of the Purdy High School record showing relator's attendance and grades and further purporting to have been signed and sworn to by Leslie K. Grimes, Superintendent of the Purdy Schools, on August 31, 1922, the members of the State Board of Health at the hearing were justified in concluding that such had been presented by relator in support of the "Certificate of Preliminary Education" by him previously presented and filed. The deposition of Leslie K. Grimes positively shows that he never signed this purported copy of the Purdy High School record. The evidence further showed that the only purported record of relator's attendance and grades in the Purdy High School was a loose leaf found in the High School looseleaf record, that this leaf bore a red-ink printed form of ruling identical with that appearing on the companion loose leaf bearing said forged certificate of Superintendent Grimes, that no such loose leaf form was ever used in the Purdy High School Record prior to 1920-21, and that no other sheet in the loose leaf record was in the same handwriting. The foregoing and other suspicious circumstances in evidence, together with the positive testimony of Charles Rose, who was secretary of the Purdy School board continuously from 1912 to 1923, that diplomas or certificates of graduation from the Purdy High School were always signed by both the president and secretary of the board and that he never signed any diploma or certificate of relator as a graduate of the Purdy High School, certainly constituted substantial evidence from which the State Board of Health might reasonably conclude that relator made false and fraudulent representations as to his preliminary education as charged in the complaint.

It was not error to overrule relator's motion to make the charges in said complaint more definite and certain, as urged in relator's eighth ground.

Nor can we say that the finding of the State Board of Health was against the weight of the credible evidence, as suggested in relator's ninth ground; or that its order is contrary to the law and facts, as stated in his tenth ground; or that its action "was arbitrary, erroneous, unreasonable and unjust and without authority and jurisdiction," as urged in his eleventh ground.

Relator's twelfth and thirteenth grounds are too general and indefinite for consideration on appeal.

Relator's fourteenth ground is directed to the testimony of E. H. Riske, secretary of the State Board of Pharmacy, and to complainant's exhibits 20, 21 and 22 identified and introduced in evidence in connection therewith. These exhibits consisted of the affidavit of E. D. Watson, Superintendent of the Purdy High School, given under date of November 29, 1920, stating that R. B. Horton had "satisfactorily completed the 10th grade, which is equivalent to two years of High School attendance;" an affidavit as to R. B. Horton's character and drug store experience; and R. B. Horton's affidavit for registration as an assistant pharmacist. We are unable to discover the materiality or relevancy of this testimony or these exhibits, but it does not appear that relator was prejudiced thereby.

What has heretofore been said as to relator's sixth ground also disposes of the fifteenth and last ground of relator's motion to quash.

The entire record of the proceedings and evidence before the State Board of Health reviewed in the light of the points raised on certiorari in the circuit court discloses substantial competent evidence supporting the finding and order of said board and no proper ground to quash said proceedings.

It follows that the action of the State Board of Health in revoking relator's license to practice medicine and surgery should be sustained, and the judgment of the Circuit Court of the City of St. Louis quashing said proceedings and ordering said board to restore relator's license should be reversed. It is so ordered. All concur, except *Gentry, J.*, not sitting.