Janice M. KOETTING, Appellant,

v.

STATE BOARD OF NURSING, Respondent.

No. WD 71766.

Missouri Court of Appeals, Western District.

July 6, 2010.

Richard D. Watters, Margaret Scavotto, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, Jonathan M. Hensley, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and VICTOR C. HOWARD and ALOK AHUJA, Judges.

MARK D. PFEIFFER, Presiding Judge.

We examine this case on appeal to determine whether the Administrative Hearing Commission (AHC) had sufficient evidence to discipline Janice Koetting (Koetting) under section 335.066.2(1) RSMo.[1] In subjecting Koetting to such discipline, the AHC ruled in favor of the Missouri State Board of Nursing (Board). Koetting appealed to the Cole County Circuit Court (trial court), and the trial court affirmed the disciplinary decision of the AHC. Koetting timely appealed to this court and we affirm.

## Summary of Facts

Koetting is licensed by the Missouri State Board of Nursing as a registered professional nurse (R.N.), and her license was current and active at all times relevant to this case. Koetting was employed as an R.N. at Cedar County Memorial Hospital (Cedar County) in El Dorado Springs, Missouri. Her duties included assessing patients, giving medications, giving guidance to aides, and assisting with patient care. The genesis of this case was a pattern of absenteeism beginning in December of 2003. Koetting was scheduled to work on December 15 and 16, 2003, but called in sick. Subsequently, Koetting was on the Cedar County nurses' schedule to work January 18, 2004, but was absent without explanation. The schedule further showed that Koetting was to work January 26–31, 2004, but called in sick for those six

days. In February, Koetting's pattern of absences continued. She was scheduled to work February 3–7, 10, and 12–14, 2004, but was absent without explanation all nine of those days. In total, during a sixty-day period Koetting missed eighteen days of work.

Sue Hughes (Hughes), Director of Nurses for Cedar County, became aware that Koetting's absences were related to a struggle with alcohol. Koetting met with Hughes, and they discussed Koetting's problems with alcohol. Koetting also met with Julia Phillips (Phillips), Assistant Director of Nurses for Cedar County, and discussed this pattern of absenteeism. The result of their discussion was that Koetting was granted an unpaid leave of absence, with the understanding that she was to seek treatment for her alcohol abuse.

After the leave of absence and before Koetting was allowed to come back to work at Cedar County, Hughes drafted a "Return to Work Agreement" with direct input from hospital administration on the restrictions and requirements to be imposed. On March 15, 2004, Hughes met with Koetting, they read the agreement together, and Koetting agreed to the terms and signed the document, which stated, in pertinent part:

> Cedar County Memorial Hospital granted you unpaid leave of absence due to *inability to meet the requirements of the job i.e. attendance due to alcohol impairment.*

(Emphasis added.) [2]

The agreement also required Koetting to submit to alcohol and drug testing prior

1. All statutory citations are to the 2000 Revised Statutes of Missouri, unless otherwise indicated.

2. Thus, while Koetting's lawyers may now argue that there is no direct evidence of Koetting's alcohol impairment and a corresponding negative impact on the ability of Koetting to do her nursing job, this document reflects

to returning to work and randomly as requested by the hospital, to report to the emergency room if she called in to miss work for any reason, and to submit to an alcohol and drug screening if such a step was indicated by her appearance, demeanor, or conduct.

Three days later, Koetting was scheduled to work on March 18, 2004, and did not call or show up at the hospital. Koetting's friend and nursing colleague, Lerri Burchett (Burchett), went to Koetting's home to check on Koetting on March 18, 2004. Koetting told Burchett that she had been drinking the night before and was tired and depressed. Finding Koetting in the condition that she found her, Burchett believed it was necessary to take Koetting to an alcohol treatment facility, and Koetting agreed.

Cedar County then terminated Koetting's employment and reported her termination and the reasons for her termination to the Board.

The Board filed a complaint alleging that Koetting's use of alcohol was to such extent that it impaired her ability to perform the work and duties of a professional nurse. The Board asserted that Koetting's nursing license was therefore subject to discipline under sections 335.066.2(1), (5) and (12). The AHC entered an order granting partial summary determination for Koetting, finding no grounds for discipline under section 335.066.2(12). A hearing was held before the AHC on April 11, 2008. On December 23, 2008, the AHC entered its final decision, finding Koetting subject to discipline under section 335.066.2(1) but not under section 335.066.2(5). Pursuant to this ruling, the Board placed Koetting's nursing

license on probation for one year.[3] Koetting appealed to the Cole County Circuit Court (trial court), and the trial court affirmed the disciplinary decision of the AHC. This timely appeal follows.

## Standard of Review

We review the decision of the AHC and not the trial court's judgment. *Bird v. Mo. Bd. of Architects, Prof'l Eng'rs, Prof'l Land Surveyors & Landscape Architects*, 259 S.W.3d 516, 520 (Mo. banc 2008). We examine the decision to determine if, upon due consideration to the whole record, there is sufficient competent and substantial evidence to support the decision. *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009) (citing *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)). We look to see if the decision of the AHC is "the rare case when the award is contrary to the overwhelming weight of the evidence." *Hampton*, 121 S.W.3d at 223. We do not review the evidence in the light most favorable to the decision. *Id.* However, the AHC " 'is the sole judge of the credibility of witnesses and the weight and value to give to the evidence.' " *Clayton v. Langco Tool & Plastics, Inc.*, 221 S.W.3d 490, 493 (Mo. App. S.D.2007) (quoting *Blackwell v. Puritan–Bennett Corp.*, 901 S.W.2d 81, 85 (Mo. App. E.D.1995)). Our review of issues of law is *de novo*. *State Bd. of Registration for Healing Arts v. McDonagh*, 123 S.W.3d 146, 152 (Mo. banc 2003).

## Sufficiency of the Evidence and Grounds for Discipline Under Section 335.066.2(1)

In her first two points on appeal, Koetting argues (1) that the AHC's decision

---

Koetting's admission that her alcohol use was, in fact, an impairment causing numerous absences from work and, by her further admission, these absences reflected her ina-

bility to meet the requirements of her nursing job.

3. The disciplinary probation order has been stayed pending appeal.

was not supported by competent and substantial evidence, because she argues there was no evidence that Koetting's absences from work were caused by alcohol use; and (2) even if the absences were alcohol related, those absences did not impair Koetting's ability to perform the work of a nurse and consequently were not subject to discipline under section 335.066.2(1).

The issue is whether there was competent and substantial evidence to support discipline under section 335.066.2(1), which states, in pertinent part:

> The board may cause a complaint to be filed with the administrative hearing commission ... against any holder of any ... license ... for any one or any combination of the following causes: (1) Use or unlawful possession of any ... alcoholic beverage to an extent that such use impairs a person's ability to perform the work of any profession licensed or regulated by sections 335.011 to 335.096.

Koetting maintains that the "Return to Work Agreement" is the only evidence indicating that Koetting's alcohol use was an impairment to her ability to come to work when scheduled or otherwise impacted her ability to work. It was not disputed at the AHC hearing, at the trial, or in this appeal that Koetting signed the "Return to Work Agreement," which expresses that her ability to perform her work was impaired, "i.e. attendance due to alcohol impairment." The agreement also states that Koetting was granted a leave of absence in order for her to seek and receive treatment and counseling, presumably for such alcohol impairment. Although its admission was not objected to at the AHC hearing, Koetting now asserts this agreement was given undue weight by the AHC because it was not a voluntary admission.

In arguing that the document is not credible evidence, Koetting cites *Around* *The World Importing, Inc. v. Mercantile Trust Co., N.A.,* for the requirements for *admitting* an admission by a party-opponent, specifically "a conscious or voluntary acknowledgment by a party-opponent of the existence of certain facts." 795 S.W.2d 85, 89 (Mo.App. E.D.1990). Koetting cites this standard in arguing that the "Return to Work Agreement" is an involuntary admission that is not credible evidence, because Koetting's only options were to sign it or to lose her job. However, the issue of admissibility of the "Return to Work Agreement" has not been preserved and is not before this court. That argument was waived when no objection to the admission of the "Return to Work Agreement" was made at the AHC hearing. In fact, at the oral argument of this appeal, Koetting's counsel stated on numerous occasions that Koetting was *not* contesting the admissibility of the "Return to Work Agreement." Nonetheless, given Koetting's argument as to the lack of credibility of the allegedly involuntarily signed agreement, it is not clear on appeal whether Koetting is asking us to consider the issue of admissibility under a plain error review or is trying to use the standard for admissibility to call into question the reliability and credibility of Koetting's admission.

Even if we consider the argument on admissibility, Missouri courts have held the "conscious or voluntary acknowledgement" element of this rule to be met in circumstances where there was dispute as to whether the admission was voluntary or coerced. *See Teel v. May Department Stores Co.,* 352 Mo. 127, 176 S.W.2d 440, 445 (1943) (conflicting testimony concerning the circumstances under which the statement was signed); *Ogle v. Todd,* 514 S.W.2d 38, 41 (Mo.App.1974) (admission made and admissible when stronger party threw weaker party against a wall and demanded an answer to a question).

██ Questions about the voluntariness of an admission go to the weight a fact finder can give the admission and not its admissibility. *Ogle*, 514 S.W.2d at 41. "[A]n admission made under duress by a party-opponent in a civil case is admissible, subject of course to comment on its weight." IV John Henry Wigmore, EVIDENCE IN TRIALS AT COMMON LAW § 1050 (Chadbourn rev.1972). Where the admission is evidence probative of a material issue, "[t]he weight and credibility to be attached to it is a matter for the [finder of fact] to determine." *Ogle*, 514 S.W.2d at 41. The AHC "[i]s the sole judge of . . . the weight and value to give to the evidence." *Clayton*, 221 S.W.3d at 493 (quoting *Blackwell*, 901 S.W.2d at 85).

Koetting proffered no evidence before the AHC challenging the credibility of the "Return to Work Agreement," aside from the testimony of Hughes that Koetting could not return to work without signing the agreement or initiating a grievance procedure with hospital administration. There was no testimony by Koetting that this demand forced her to lie or to assent to untrue statements. In fact, Koetting did not testify or otherwise present witness testimony asserting the document to be inaccurate or coerced by threats. There is no evidence on the record that Koetting herself ever denied that alcohol use caused her frequent absenteeism or protested the accuracy of the "Return to Work Agreement." This court gives deference to the findings of fact proffered by the AHC, who determined the "Return to Work Agreement" signed by Koetting to be competent and substantial evidence of Koetting's alcohol impairment and resultant absenteeism from her nursing job caused by such alcohol impairment.[4]

██ Notwithstanding Koetting's assertion that the "Return to Work Agreement" was the *only* evidence that she used alcohol to an extent that such use impaired her ability to perform the work of a professional nurse, we find additional competent and substantial evidence of such conduct in the testimony of Koetting's friend and former colleague, Burchett. Burchett was a licensed practical nurse who worked with Koetting at Cedar County. She testified at the AHC hearing that she went to Koetting's home March 18, 2004, the day Koetting was a no-call, no-show at work. Burchett testified that Koetting told Burchett that she had been drinking the night before and was tired and depressed. As a result of the condition Burchett found Koetting in on March 18, 2004, Burchett testified that she felt compelled to take her friend and colleague to an alcohol treatment facility and, notably, Koetting agreed with Burchett and stated that she was ready for such treatment.

Furthermore, the circumstances of Koetting's absence on March 18, 2004, logically connect Koetting's absence to alcohol impairment. Koetting's decision not to call or show up to work on March 18, 2004, is consistent with the testimony of Bur-

---

4. Koetting argues that the "Return to Work Agreement" is nothing more than an agreement between an employer and employee and should not constitute substantial evidence of anything more than a dispute between an employer and its employee over absenteeism. This argument belies the fact that the underlying basis for the agreement was that Koetting had missed eighteen days of work that she was scheduled for in a two-month time period, and the basis for the absenteeism was Koetting's admitted alcohol problem that had caused her to miss days of work due to alcohol impairment. Not only is this evidence relevant to the proceedings below, it is highly credible evidence of a pattern of alcohol impairment that was so strong that Koetting could not make it 72 hours past signing the agreement before she was drinking again and missing work, such that a friend and colleague felt compelled to take her to an alcohol treatment facility.

chett and a finding that Koetting had abused alcohol the night before and continued the pattern of not showing up for work due to alcohol impairment that had led to the March 15, 2004 "Return to Work Agreement" in the first place. The March 18, 2004, absence from work occurred just three days after Hughes had explained the agreement to Koetting—an agreement which Koetting read, assented to, and signed. That agreement made it perfectly clear that if Koetting missed work for *any* reason, including illness, she would have to personally appear at the hospital, and the agreement further specified that if Koetting evidenced any signs of alcohol abuse, she would have to submit to testing for alcohol in her system or lose her job. The fact that on March 18, 2004, just three days after signing the agreement, she was absent from work without calling or showing up at the hospital, despite knowing the consequences of such a course of action, constitutes substantial, circumstantial evidence of alcohol impairment and the resulting consequence that, yet again, Koetting was disregarding her professional responsibilities to the members of her health team and the patients whom her health team served.

■ We agree with the AHC that Koetting's disregard of her professional responsibilities by engaging in alcohol use, which caused a pattern of absenteeism, impaired her ability to work as a nurse and was subject to discipline under section 335.066.2(1). "Professional nursing" is defined in section 335.016(10)[5] to include, among other things, "[t]he coordination and assistance in the delivery of a plan of health care with all members of a health team" and contemplates that nurses possess unique expertise through education and experience that is vital to quality patient care. It is the unique expertise of a nurse in the setting of a health *team* that makes habitual absences from work due to alcohol misuse so critical to the performance of the duties of a licensed nurse.[6]

For example, Koetting uses the analogy of golf professional, Tiger Woods, and states that "[n]o one would argue that Tiger Woods is 'impaired' in his professional golfing abilities because he has missed some tournaments." The difference is fundamental to the analysis of this case: Where Tiger Woods is a team of one, Koetting is one of a team. Where Tiger Woods's profession is hitting a golf ball and has *nothing* to do with the health and well-being of others, Koetting's profession is serving as a member of a "health team" in which the health and well-being of patients has *everything* to do with Koetting's profession, and these patients depend heavily upon Koetting and her profession on a daily basis. Koetting seems to argue that since none of the hospital's patients appear to have suffered harm due to her repeated alcohol-induced absences, there is no evidence that her repeated absences negatively impacted the duties of her profession and she should not be subject to discipline. However, the duty of the Board is broader than *responding* to harm—its duty is to proactively seek to *prevent* harm by members of this profession before it happens when the Board has knowledge of the sort of professional wrongdoing contemplated by section 335.066.2(1).

---

5. The definition of "professional nursing" has subsequently been amended by location only to section 335.016(15).

6. "[A] professional license is not a vested right, but rather a privilege." *Mo. Real Estate Comm'n v. Rayford,* 307 S.W.3d 686, 691 (Mo. App. W.D.2010) (numerous internal citations omitted).

Koetting argues that "[a] nurse's failure to report to work on one occasion does not indicate that [the] nurse is impaired in her ability to perform the professional work of a nurse" and furthermore "[a]bsenteeism does not constitute a nurse's professional work and therefore is not a basis for discipline under Chapter 335."

In response, the substantial evidence before the AHC was that (1) Koetting's alcohol impairment, by Koetting's own admission in the "Return to Work Agreement" and by her subsequent conduct and conversations with Nurse Burchett, was such that her absences from work due to alcohol impairment were not isolated—they were habitual; (2) Koetting's habitual absences from work due to alcohol impairment were so substantial that multiple members of Koetting's health care team (i.e. Director of Nursing Hughes and Nurse Burchett) sought to intervene with Koetting and attempted to get her alcohol counseling and treatment; (3) Due to Koetting's alcohol problems, Koetting failed to "coordinate and assist" her "health team" members "in the delivery of a plan [i.e. schedule] of health care" due to her self-induced alcohol-related absences on multiple and continuing occasions.

While the AHC did not specify the dates of Koetting's absences due to alcohol impairment, the AHC documented a significant and habitual pattern of absences from work, followed by Koetting's admission in the "Return to Work Agreement" that her attendance problems were due to alcohol impairment, followed by Koetting's continued pattern of drinking and missing work, followed by Koetting's ultimate assent to Nurse Burchett that it was time to get alcohol counseling and treatment. Under these substantial and substantiated facts, we hold the AHC's decision was supported by competent and substantial evidence to support discipline under section 335.066.2(1) for use of alcohol to an extent that such use impaired Koetting's ability to perform the work of a professional nurse. Specifically, Koetting's alcohol abuse impaired Koetting's ability to reasonably participate in "[t]he coordination and assistance in the delivery of a plan of health care with all members of a health team."

■ Two additional considerations support our affirmance of the Board's reading of section 335.066.2(1). First, we note that this provision is worded in an importantly different way than section 335.066.2(5). Second, we note that prior case law holds that the grounds for discipline specified in such a professional-licensing statute should be liberally construed to protect the public. The Missouri Supreme Court initially held that physician disciplinary statutes were penal in nature, and therefore were required to be liberally construed in favor of the physician, and strictly construed against the state. *State ex rel. Spriggs v. Robinson*, 253 Mo. 271, 161 S.W. 1169, 1172 (1913). This principle was later overruled, however, with the Court expressly holding that "powers conferred upon boards of health to enable them effectively to perform their important functions in safeguarding the public health should receive a liberal construction." *State ex rel. Horton v. Clark*, 320 Mo. 1190, 9 S.W.2d 635, 638 (1928); *see also Younge v. State Bd. of Reg. for the Healing Arts*, 451 S.W.2d 346, 349 (Mo.1969); *Hughes v. State Bd. of Health*, 348 Mo. 1236, 159 S.W.2d 277, 278–79 (1942). More recent cases make clear that, in construing the physician disciplinary statutes, "all reasonable doubts [should be] resolved in favor of applicability of the statute to the particular case." *Perez v. Mo. State Bd. of Reg. for the Healing Arts*, 803 S.W.2d 160, 165 (Mo.App. W.D.1991); *see also Bhuket v. Bd. of Reg. for the Healing Arts*, 787 S.W.2d 882, 885 (Mo.App. W.D.1990).

This rule of liberal construction justifies the Board's reading of section 335.066.2(1), even if a narrower construction that limited the provision to on-the-job impairment could conceivably be supported.

Koetting insists that absenteeism, in general, is not subject to Board jurisdiction. However, we find that the language "Use ... of any ... alcoholic beverage to an extent that such use impairs a person's ability to perform the work of any profession licensed or regulated by sections 335.011 to 335.096," makes clear that section 335.066.2(1) is broad enough in scope to include habitual absenteeism due to alcohol use. While a nurse may not be disciplined solely because of absence from work, when such absence is caused by alcohol impairment, and more particularly when such conduct becomes frequent or habitual, discipline under section 335.066.2(1) is appropriately invoked.[7]

Koetting's first two points on appeal are denied.

### Scope of Acts Subject to Discipline

In her third point on appeal, Koetting asserts that the AHC's findings were internally and inherently inconsistent. To support this point, Koetting takes the AHC's finding that Koetting was not subject to discipline under section 335.066.2(5), which only allows for discipline of a nurse for acts performed while on the job, and argues that such a finding is inconsistent with disciplining Koetting under section 335.066.2(1). In essence, Koetting is arguing that because the AHC found that Koetting could not be disciplined under section 335.066.2(5), she also could not be disciplined under section 335.066.2(1). Koetting's interpretation of

section 335.066.2(5) would cause section 335.066.2(1) to be superfluous statutory language, a statutory construction we presume was not intended by the legislature.

In interpreting statutes, " '[e]ach word, clause, sentence and section of a statute should be given meaning.' " *State ex rel. Womack v. Rolf,* 173 S.W.3d 634, 638 (Mo. banc 2005) (quoting *Hadlock v. Dir. of Revenue,* 860 S.W.2d 335, 337 (Mo. banc 1993)). We reject an interpretation of a statute that will cause us to ignore the language of the statute. *Id.* It is a general presumption of statutory construction that the legislature did not include superfluous language. *Norwin G. Heimos Greenhouse, Inc. v. Dir. of Revenue,* 724 S.W.2d 505, 508 (Mo. banc 1987).

As the AHC noted in its decision, sections 335.066.2(1) and (5) itemize different standards for discipline, and Koetting asserts no cognizable argument for why they should be treated identically when the language simply is not identical. Where section 335.066.2(5) describes discipline associated with misconduct "in the *performance* of the functions or duties" of a nurse, section 335.066.2(1) describes discipline associated with drug or alcohol impairment that causes the nurse to be *unable to perform* the work of a nurse (i.e. so impaired that the nurse is unable to come to work to perform the functions or duties of a nurse). Where section 335.066.2(5) describes nursing misconduct by *affirmative acts* of the nurse, section 335.066.2(1) describes nursing misconduct and a corresponding *inability to act* by the nurse.

Koetting's retained expert witness, Dr. Rita Tadych, testified that Koetting should

---

7. Our ruling today is fact specific. Koetting's relevant conduct was not isolated—it was habitual and it was the sort of conduct that reflected an unwillingness by Koetting to "coordinate and assist" Koetting's "health team," a responsibility that Koetting statutorily owes to her profession.

not be disciplined "[b]ecause there was actually good judgment used [by Koetting] in not coming to work if she was impaired," and Koetting should not be disciplined in light of the fact that Koetting "[w]as an honest individual in identifying her alcohol problems in not coming in to care for patients which would put her in a position to violate the nursing practices act." [8] While these comments are applicable (and were apparently persuasive to the AHC) to the charge that Koetting violated section 335.066.2(5), these comments are not relevant to the charge that Koetting violated section 335.066.2(1).

Simply stated, Koetting's argument ignores the clear distinction the AHC correctly makes between section 335.066.2(5), which is limited to those acts that occur "in the performance of the functions or duties" of the profession, and section 335.066.2(1), which does not express such a limitation. Referring to discipline specifically under section 335.066.2(5), the AHC's decision states that "[i]ncompetence, gross negligence and misconduct in the performance of the functions or duties of the nursing profession are limited to those acts that occur *while on duty* as a nurse." (Emphasis added.) The AHC goes on to make the distinction in its decision that "[a]lthough we have concluded that Koetting is subject to discipline *under § 335.066.2(1)* for alcohol use that impaired her ability to perform her work because it prevented her from going to work[,] *[s]ection 335.066.2(5)* is limited to those acts that occur *in the course of performing* the functions or duties of the profession." (Emphasis added.)

Consequently, we find that Koetting's argument in this point misconstrues the AHC's decision and is without merit. We hold that the AHC's findings were not internally and inherently inconsistent. Instead, the AHC's decision was consistent with a plain and harmonized reading of sections 335.066.2(1) and 335.066.2(5). Koetting's third point on appeal is denied.

## Public Policy

■ Koetting's fourth point on appeal argues that the AHC's finding is arbitrary, capricious or unreasonable in that it allegedly ignores and puts at risk the public policy of honoring a nurse's decision not to report to work while under the influence of alcohol. Koetting argues that imposition of discipline under section 335.066.2(1) in this case creates a dangerous incentive, allegedly encouraging nurses and other health professionals to report to work when they are impaired.

A nurse who has voluntarily placed himself or herself under the influence of alcohol at a time when he or she is aware of a preexisting commitment to work has a choice. He or she can go to work while impaired by alcohol, which creates the probability of invoking discipline under section 335.066.2(5), or remain absent from work, which, if the absences are prolonged and habitual could possibly and eventually result in discipline under section 335.066.2(1). It is not reasonable to assume that, when faced with this choice, the decision of the AHC would encourage a nurse to go to work impaired and risk discipline under section 335.066.2(5) to avoid the possible discipline under section 335.066.2(1) if a nurse consistently misses work for alcohol-related reasons.

The AHC's decision supported the capacity of the Board to punish Koetting's

---

8. Tadych's testimony is further support for the AHC's conclusions that (1) Koetting had an alcohol abuse problem; (2) Koetting's alcohol use often led to alcohol impairment; and (3) Koetting's alcohol impairment was so severe at times that she simply could not perform the work of a nurse and, hence, Koetting was habitually absent.

pattern of poor decisions to consume enough alcohol to impair her ability to work as a nurse. A holding that habitual absenteeism caused by alcohol abuse does not support disciplinary action, which we decline to support, could adversely affect patient care by potentially leaving hospitals understaffed or forcing some nurses to work double shifts, putting patients at greater risk, especially in rural areas of Missouri where hospitals have fewer options.

Our ruling today does not encourage nurses to risk driving drunk to work or to perform the work of a professional nurse while under the influence of alcohol. It does discourage habitual, excessive alcohol use by professional nurses that would impair their ability to practice their profession. Koetting's fourth point on appeal is denied.

### Conclusion

The AHC's decision was supported by substantial and competent evidence and is, in all other respects, not subject to reversal. The judgment below is affirmed.

VICTOR C. HOWARD, Judge, and ALOK AHUJA, Judge, concur.