THOMPSON, State Revenue Commissioner, *v.* ATLANTIC COAST LINE RAILROAD COMPANY.

No. 15480.   JUNE 6, 1946.

858

*Eugene Cook, Attorney-General, Claude Shaw, E. J. Clower,* and *Victor Davidson, Assistant Attorneys-General,* for plaintiff in error.

*T. M. Cunningham, Carl H. Davis,* and *Alston, Foster, Sibley & Miller,* contra.

DUCKWORTH, Justice. (After stating the foregoing facts.) ■ There appears in the Constitution of 1945 (article 1, section 3, paragraph 3) the following provision: "All exemptions from taxation heretofore granted in corporate charters are declared to be henceforth null and void." There are two specific and inescapable legal reasons why the provision of the new Constitution just quoted does not and can not alter or affect the existing rights of the Atlantic Coast Line Railroad Company involved in this case. The first of these solid legal reasons is that the quoted provision does not purport to be retroactive; and even if it was expressly made retroactive, it would nevertheless be completely ineffective in so far

as the fixed and established rights of this party are here concerned. The second reason is that this State is powerless by legislative enactment or constitutional provision to nullify or impair in any respect whatever its existing contractual obligations. If the charter provisions referred to are invalid, there would be no need for this constitutional declaration. If they are valid, then this declaration is empty and without legal effect. Article 1, section 10, Constitution of the United States; *Wheeler* v. *Board of Trustees,* 200 *Ga.* 323 (37 S. E. 2d, 322). By such charter provisions the State became a party to a contract, and however great the financial losses resulting from such tax limitation may be, such loss is nothing compared to the integrity and the solemn duty of the State to discharge fully any and all contractual obligations which it legally assumed.

■ In the view that we take of this case, we find it unnecessary to pass upon the validity of section 15 of the charter, upon which the railroad relies. If it be conceded that the charter provision referred to is valid, that the legislative branch of the government had the legal power thus to surrender a part of the sovereignty of the State and thereby tie the hands of all future legislatures, in so far as legislating freely upon the question of taxation of this corporation, and if it be conceded that the constitutional inhibition against the inclusion, in the body of an act, of matter different from and foreign to the subject embraced in the caption did not render this act void—we come, after all, to the plain provision of the charter which is dealing with and is confined to the subject of a property tax, unrelated to the question we now have of the liability of the corporation for its share of an income tax under the existing laws of the State. The exact language of the charter upon which the railroad relies is as follows: "The stock of the said company and its branches shall be exempt from taxation for and during the term of seven years from and after the completion of the said railroads or any one of them; and after that, shall be subject to a tax not exceeding one-half percent per annum on the net proceeds of their investments."

The decisive question is, whether or not this charter provision refers to and embraces income taxes, or is limited strictly to a property tax. It can not be denied that any and all tax exemptions must be strictly construed, and unless the language clearly grants

the exemption, it is the duty of the court to rule in favor of the State and against the corporation. Here we have the very foundation of the exemption or limitation stated at the outset to have reference to "the stock of the said company and its branches." If the rule of construction of exemptions above referred to is to be given any meaning whatever, it compels a construction of this provision that limits it to the stock or property of the corporation. Had it been intended that the corporation as a legal entity should forever be free from any sort or form of taxation except the one-half of one percent as therein provided, it would have been a simple matter to have so provided and thus to have made clear such an intent. In failing to make clear such an intent, it is assumed that the legislature intended that the courts apply the rule of construction and restrict the exemption to the limits there stated, and never extend it by writing in something more. There should be no difficulty in seeing clearly that the reference to income was intended solely as a statement of a basis for the calculation of the property taxes there expressly referred to. The fact that the net income is made this basis, and the tax limited to one-half of one percent of such income, in no wise renders the provision one for an income tax against the corporation. A number of railroad charters existing at the time or subsequently granted contained similar provisions for taxation, but there existed in this State at that time no general law providing for income taxes. It was almost a century thereafter before the legislature enacted our present income tax statute.

We are not unmindful of certain language of the Federal courts indicating that those courts regarded the tax referred to in this charter provision as an income tax. See Wright *v.* Georgia Railroad & Banking Co., 216 U. S. 420 (supra); Wright *v.* Louisville & Nashville Railroad, 236 U. S. 687 (35 Sup. Ct. 475, 59 L. ed. 788); Georgia Railroad & Banking Co. *v.* Wright, 132 Fed. 912. In Wright *v.* Georgia Railroad & Banking Co. (page 431), it is said: "That railroad is the product of the investment of the authorized capital, and is, as such, subject only to a tax based upon its 'net proceeds.' This plan of tax upon net earnings is quite consistent with any other form of taxation, and is absolutely independent of any question as to whether the property thus taxed only upon its profits should have a less or greater value than the capital invested." Again (page 432), it is said: "If we are

right in construing the tax as one upon net income as a substitute for a property tax, the franchise may no more be taxed than any other property appropriate to the operation of the road." It is obvious from the language of the Supreme Court just quoted that the only question then being considered by that court was whether or not the property of the railroad could be further taxed. There was not before the court, and indeed it may well be doubted if the court thought of whether or not the corporation could be subjected to a State income tax under a valid law of the State thereafter enacted. Although that court said that it construed the charter provision to constitute a substitute for a property tax, this does not alter the legal question now involved, for it makes no difference whether the charter provision dealt expressly and exclusively with a property tax or provided that an income tax of one-half of one percent might be collected as a substitute for a property tax. It was after all and nevertheless dealing with the subject of a property tax, and not with the subject of an income tax. We, therefore, hold that section 15 of the charter relates only to a property tax and has no bearing on the question of income taxes. The conduct of the corporation and of this lessee, as well as the State officials, points clearly to the fact that all of them interpreted this provision to relate solely to a property tax. This is shown by the fact that the Georgia Railroad & Banking Company has throughout the period of this lease yearly paid taxes to the State. It arrived at the amount of taxes due by taking one-half of one percent of the net income, not its net income, but the net income of the Atlantic Coast Line Railroad Company earned by the use of this property. If this tax was an income tax, as contended by the railroad, then the earner of that income would be the proper party to pay the tax. The net income used as a basis for the calculation of the amount of taxes was the net income of the Atlantic Coast Line Railroad Company, in which the Georgia Railroad & Banking Company had no interest whatever. Obviously the Georgia Railroad and Banking Company had no obligation to pay an income tax on income in which it had no interest whatever. It paid the taxes on its property in conformity with the provision of its charter, because it recognized its legal obligation for the payment of property taxes upon its own property, and not because it was due the State an income tax arising from income belonging entirely to this lessee.

Having decided that the charter refers to a property tax on the stock of the corporation, and that only, we move on to the further question of whether or not the charter is a bar to the collection of the income tax here sought, which tax is based upon a law enacted in 1931 as amended, Code (Ann. Supp.) § 92-3102, as follows: "Every domestic corporation and every foreign corporation shall pay annually an income tax equivalent to five and one-half percent of the net income from property owned or from business done in Georgia, as defined in § 92-3113: Provided, that the amount of the tax shall not be less than would be produced by applying a rate of two percent to a base consisting of the entire net income, as defined in this Title, plus all salaries and other compensation paid to all elected and appointed officers, and to the stockholder owning in excess of five percent of the issued capital stock of the corporation or a relative per centum of the capital stock of any other corporation owning or holding the capital stock of such corporation, and after deducting from such base $10,000 and the deficit, if any; such tax shall be assessed upon the base provided by this section which will produce the greater tax."

In *Mayor &c. of Savannah* v. *Hartridge*, 8 *Ga.* 23 (1), this court recorded its definite opinion to the effect that there was a well-defined and marked distinction between a property tax and an income tax or capitation tax. It was there stated: "Taxation, in reference to the subject matter, is divided by writers on political economy, as well as the tax laws of all governments, into three classes—capitation, property, and income; and where one or more is treated of or acted upon, *the other is never intended.*" (Italics ours.) This declaration by the court of last resort of this State in the early years of its existence established the policy of our law as one refusing to mix or confuse the three types of taxes. It was a wise and safe guide then. It remains so today, and while that decision was rendered several years after the enactment of the charter here involved, it must be assumed that the legislature, when enacting this charter, was acquainted with the fact as there recited that "writers on political economy, as well as the tax laws of all governments," thus divided the forms of taxation and adhered to the rule that, where one or more of the forms of taxation are treated or acted upon, "the other is never intended." It is further said in headnote 3 of the cited case that: "A charter, authorizing a

municipal corporation to tax real and personal estate, does not, necessarily, confer the right to tax income." This principle, stated differently to apply to the present case, means that the charter here, limiting to 1/2 of 1 percent of the income tax that may be levied against the stock (personal or real estate), does not necessarily confer an exemption against an income tax. To the same effect, see *Waring* v. *Savannah*, 60 *Ga.* 93; *Featherstone* v. *Norman*, 170 *Ga.* 370 (153 S. E. 58, 70 A. L. R. 449). In Purnell *v.* Page, 133 N. C. 125, 129 (45 S. E. 534), it is said: "The tax levied on income is not a property tax, but is a percentage laid on the amount which a man receives, irrespective of whether he spends it, wastes it, or invests it."

Since the railroad here plants its resistance to the tax sought to be collected squarely upon the charter provision of its lessor, and the contention that to apply the income tax law would offend the contract clause of the Federal Constitution, article 1, section 10 (Code, § 1-134), which prohibits a State from enacting a law that impairs the obligation of a contract, the decisions of the United States Supreme Court on this question are controlling and must be followed by the Supreme Court of Georgia. Without here entering upon an extended, and in so far as this case is concerned, useless discussion of the various decisions of that court in cases somewhat similar to the case now before us, we may rest our decision upon the decision of that court in Hale *v.* State Board, 302 U. S. 95 (58 Sup. Ct. 102, 82 L. ed. 72). It will be observed that in arriving at the conclusion there the Supreme Court accepted previous decisions of the Supreme Court of Iowa defining different forms of taxation. There the State of Iowa sought to collect an income tax under an income tax statute from the holder of certain county school-district and other public bonds that were issued prior to the enactment of the income tax statute, and at the time of the issuance of the bonds there existed in that State general laws prohibiting taxation of such bonds. Both the Supreme Court of Iowa and the Supreme Court of the United States—while recognizing that the law providing for exemption from taxation amounted to a contract, and the case was decided on the basis of this assumption—held that collection of the income tax did not constitute an impairment of the contract in violation of the Federal Constitution. The Supreme Court pointed out that the non-existence of an income tax law in

the State at the time the legislature was enacting the law exempting the bonds from taxation showed that the legislature had no intention to include or refer to an income tax when enacting the exemption statute, and that, after all, the legislative intent was the controlling factor in a proper interpretation of the exemption statute. Such reasoning applies with compelling force in the present case. There existed in Georgia at the time this charter exemption was enacted no general law which would subject the corporation to the payment of an income tax. In the exemption clause it was expressly stated that the limitation there provided was upon the taxation of stock of the corporation, identical in this respect with the Iowa exemption law if a substitution of bonds for stock is made. Hence, here, as the Supreme Court said with reference to that case, the legislature of Georgia, in enacting this exemption clause, did not intend to include an income tax. Such limitation or exemption was not necessary, because in the absence of the same no income tax, under the law as it then existed, would have been exacted of the corporation. The decisions of this court above referred to commit this court to a construction of tax laws which excludes a tax not referred to in the specific system of taxation dealt with. This rule of construction, which was applied in the Iowa case above, will be followed and applied by this court. We are impressed by the language employed by the Supreme Court in the above case, at page 109, where it is said: "The court is now concerned with the meaning and effect of particular contracts of exemption to be read narrowly and strictly. There is no room at such time for the freer and broader methods that have been thought to be appropriate in the development of the doctrine of implied restraints." By that plain language the Supreme Court gave definite meaning and the proper effect to the universal rule of construction which requires tax exemption laws to be strictly construed with all doubtful meanings resolved in favor of the taxing authority and against the exemption. Such language evidences a practical and reasoned approach, rather than a theoretical and mechanical one. As a legalistic theory it might be urged that, where property is by law exempted from taxation, the full benefit of such exemption is not realized if the owner is required to pay a tax calculated upon the income he receives from the ownership and the use of such property. But a practical construction and fair rec-

ognition of the extreme difference in the two methods of taxation expose the utter fallacy of such a theory. In the one case, the property would be subjected to the payment of a tax irrespective of who was its owner in the absence of such exemption, while in the other case irrespective of the ownership of the property which constitutes the instrumentality with which an income is realized, and irrespective of the disposition of such income, the party receiving the income is required to pay a percentage thereof as an income tax chargeable against himself as the earner and not against the property. Bearing upon the question here decided and in harmony therewith, see Clyde v. Gilchrist, 262 U. S. 94 (43 Sup. Ct. 501, 67 L. ed. 883); Mason Co. v. Tax Comm., 302 U. S. 186 (58 Sup. Ct. 233, 82 L. ed. 187); Adam v. Saenger, 303 U. S. 59, 62 (58 Sup. Ct. 454, 82 L. ed. 649); N. Y. Rapid Transit Corp. v. New York, 303 U. S. 573 (58 Sup. Ct. 721, 82 L. ed. 1024); Adams Mfg. Co. v. Storen, 304 U. S. 307 (58 Sup. Ct. 913, 82 L. ed. 1365, 117 A. L. R. 429); Graves v. N. Y. ex rel. O'Keefe, 306 U. S. 466 (59 Sup. Ct. 595, 83 L. ed. 927, 120 A. L. R. 1466); U. S. Trust Co. v. Helvering, 307 U. S. 57 (59 Sup. Ct. 692, 83 L. ed. 1104).

In arriving at our decision, here holding a lessee of the railroad subject, under the income tax statute of the State, to the payment of the tax here claimed, we have not been unmindful of, but have given full consideration to, the previous decisions of this court and the Federal courts. We have not overlooked the fact that the Supreme Court in Wright v. Georgia R. & Banking Co., 216 U. S. 420, affirmed a judgment of the lower court which enjoined the State officials from collecting or attempting to collect any taxes from the Georgia Railroad and Banking Company except 1/2 of 1 percent of its net income, as provided in section 15 of its charter. We do not regard that judgment as an obstacle to the collection of the present tax, for the reason that when it was rendered no income tax statute existed in Georgia, and, hence, the Federal court did not and could not have given consideration to the question of whether or not the corporation there, or as in the present case a remote lessee of the property, might be subjected to the payment of an income tax under the law now relied upon, enacted many years subsequently to that judgment. A careful reading of the opinion in that case reveals that, notwithstanding the fact that the court many times used expressions indicating that the charter pro-

vision involved referred to an income tax, yet each time the court ultimately asserted that the tax there provided for was either a tax upon the stock or was a tax agreed upon as a substitute for a property tax. It is obvious, therefore, that, whether it was a property tax or a substitute for a property tax, it was not a substitute for an income tax, nor was it intended as a bar to the collection of an income tax under a proper law. The indisputable facts sustain the Revenue Commissioner's claim. The law under which the income tax assessment was made is a valid law of this State, and there being no legal obstacle to the collection of the tax here claimed, a judgment in favor of the State Revenue Commissioner was demanded, and the court erred in rendering judgment in favor of the Atlantic Coast Line Railroad Company.

*Judgment reversed, with direction. Bell, Chief Justice, Jenkins, Presiding Justice, Duckworth, Atkinson, and Wyatt, Justices, and Judges Knox and Crow, concur. Head and Candler, Justices, disqualified.*