**FARM AND HOME SAVINGS ASSOCIATION, Respondent,**

v.

**James R. SPRADLING, as Director of Revenue of the State of Missouri, Appellant.**

No. 59091.

Supreme Court of Missouri, Division No. 1.

June 14, 1976.

Motion to Transfer en Banc Denied July 12, 1976.

John C. Danforth, Atty. Gen., John D. Ashcroft, Asst. Atty. Gen., appellant.

Ewing, Ewing, Carter & Woodfill, Gilbert Carter, Nevada, for respondent.

BARDGETT, Judge.

The question presented is whether section 148.520, RSMo 1969, exempts the purchase of items otherwise taxable under the Missouri Sales and Use Tax statutes, sections

144.010 to 144.745, RSMo 1969, from those taxes when the purchaser is a savings and loan association.

Farm & Home Savings Association (Association) instituted this suit by the filing of an agreed statement of facts in the circuit court of Vernon county, Missouri, against the director of revenue, state of Missouri (Director), seeking a refund of sales and use taxes paid by the Association, purchaser, or International Business Machines Corp. (IBM), the seller, to the Director under protest.

The Association also contends that if this court decides that the sales tax is payable on the purchases then it is entitled to the 2% deduction for remitting the same under section 144.140.

The refund claims are described as follows:

| 1. | 2. | 3. | 4. | 5. | 6. |
|---|---|---|---|---|---|
| Claim No. | Claim Amount | Tax Type | By Whom Paid | Date or Dates of Payment | Date Claim Filed |
| 1 | $ 4,686.55 | Use | Farm & Home | 1–30–74 | 1–30–74 |
| 2 | 65,734.05 | Use | Farm & Home | 1–30–74 | 1–30–74 |
| 3 | 34,897.50 | Use | Farm & Home | 4–24–72 | 1–30–74 |
| 4 | 31,759.53 | Use | IBM | Various | 1–30–74 |
| 5 | 2,576.33 | Use | Farm & Home | 4–24–74 | 4–24–74 |
| 6 | 4,522.39 | Use | Farm & Home | 4–24–74 | 4–24–74 |
| 7 | 1,582.82 | Use | Farm & Home | 7–19–74 | 7–19–74 |
| 8 | 1,458.84 | Use | Farm & Home | 7–19–74 | 7–19–74 |
| 9 | 5,420.70 | Sales | Farm & Home | 7–19–74 | 7–19–74 |
| 10 | 6,735.54 | Sales/Use | Farm & Home | 10–10–74 | 10–10–74 |
| 11 | 1,265.44 | Use | Farm & Home | 10–10–74 | 10–10–74 |

Column one assigns to each claim the numerical designation given it for purposes of this agreement.

Column two shows the amount of each claim as it appears in the claim for refund or protest affidavit that Farm & Home filed with the Director (as amended in the case of claim No. 4). It is agreed that such amount was paid to the Department of Revenue.

Column three shows for each claim the type of tax that was paid, that is, whether use tax or sales tax.

Column four shows for each claim by whom (whether by Farm & Home or by its supplier or suppliers) the tax amount shown in column two was paid to the Department of Revenue.

Column five shows for each claim the date or dates of payment to the Department of Revenue of the tax amount shown in column two.

Column six shows for each claim the date that it was filed with the Director.

The Association is a mutual savings and loan association as defined in section 148.-470.

The circuit court held that the purchases by the Association were exempt from the sales and use tax under section 148.520 and the Director appealed. This court has jurisdiction because the case involves the construction of the revenue laws of this state. Art. V, sec. 3, Mo.Const., as amended.

The Association's claims for refund are based entirely upon section 148.520 which provides:

Sections 148.470 to 148.530 constitute a classification of accounts of associations as intangible property, and the annual tax imposed by the sections upon the earnings, including dividends and interest, paid or credited to an account, which shall be the annual yield from the account, is exclusive and in lieu of all other taxes of whatsoever nature against or upon associations, their property, capital or income, except ad valorem taxes upon real and tangible personal property and social security, unemployment compensation and franchise taxes.

As noted supra, some of the purchases are claimed by the Director to be subject to

the sales tax and others to the use tax. Missouri's sales tax provisions were originally adopted in 1934 (Laws of Mo.1933–34, Ex.Sess., p. 155), while the first general use tax known as the "Compensating Use Tax Law" was enacted in 1959 (Laws of Mo. 1959, H.B. 35). Since the sales tax was enacted before the use tax, the sales tax will be considered initially.

The Director contends that the sales tax is a tax on the seller, not the purchaser, and therefore the exemption provisions of section 148.520 do not apply because the Association is the purchaser, not the seller. The Association argues that the burden of sales taxes falls on the purchaser and therefore it is exempt from the imposition of this tax under section 148.520.

In *Automatic Retailers of America, Inc., v. Morris, Director of Revenue,* 386 S.W.2d 901 (Mo. banc 1965), this court held the sales tax law, sections 144.010–144.430, as amended Laws 1963, pp. 195–199, constituted a tax upon the purchaser and not upon the seller. The court invited the general assembly, which was then in session, to consider whether it desired to take legislative action with respect to the nature of the sales tax. The general assembly readily accepted the invitation with the adoption of H.B. 523 with an emergency clause. See Laws of Mo.1965, p. 261.

Subsequently, this court has on two occasions considered the question of whether the sales tax law, as amended in 1965, constituted a tax on the buyer or the seller and on both occasions held the sales tax law as amended was a gross-receipts tax imposed upon the seller. *Fabick and Company v. Schaffner,* 492 S.W.2d 737 (Mo.1973); *Virden v. Schaffner,* 496 S.W.2d 846 (Mo.1973). In *Virden,* the second of the two cases, the court said at 848: "We reaffirm that the entire tax imposed by Chapter 144 is a gross receipts tax."

In this case the Association is the purchaser. The sales tax is a tax upon the gross receipts of the seller. The fact that section 144.060, RSMo 1969, imposes the duty upon the purchaser to pay the amount of the tax to the seller does not alter the legal nature of the tax. In *Ferrara v. Director, Division of Taxation,* 127 N.J.Super. 240, 317 A.2d 80, 83 (1974), it was said, ". . . the mere fact that it may be universally recognized that the ultimate economic burden of a tax is passed on to the consumer does not determine the *legal incidence* of the tax. Traditionally, the economic burden of all taxes, like costs in general, is passed down to the consumer level." See also *Martin Oil Service, Inc. v. Department of Revenue,* 49 Ill.2d 260, 273 N.E.2d 823 (1971), cert. denied 405 U.S. 923, 92 S.Ct. 961, 30 L.Ed.2d 794.

The court holds that section 148.520, *supra,* does not afford the Association a tax exempt status as to sales taxes.

Section 148.520 was enacted in 1945, Laws of Mo.1945, p. 1919, sec. 7, but, as noted supra, it was not until 1959 that the general assembly enacted the "Compensating Use Tax Law" in Missouri. See sections 144.600–144.745; RSMo 1969. Section 144.610(1) imposes a tax for the privilege of storing, using or consuming within Missouri any article of tangible personal property purchased on or after a certain date in an amount equivalent to the percentage imposed on the sales price in the sales tax law in section 144.020. The purchaser is liable for the tax although there are provisions whereby the seller can collect the tax and remit it to the state and give the purchaser a receipt therefor. Sec. 144.610(2). "Person" is defined by section 144.605(2) as "any individual, firm, copartnership, joint adventure, association, corporation, municipal or private, and whether organized for profit or not, state, county, political subdivision, state department, commission, board, bureau or agency, except the state highway department, estate, trust, business trust, receiver or trustee appointed by the state or federal court, syndicate, or any other group or combination acting as a unit, and the plural as well as the singular number; . . . ."

The act provides for specific exemptions from the tax by section 144.615 and incorporates as exemptions from the use tax some of the exemption provisions of the sales tax

law. There are no provisions exempting savings and loan associations from the tax either by use of a description of the type of enterprise such as "religious and charitable organizations" (144.040) and "ticket sales made by benevolent, scientific and educational associations" (144.042) or by a description of the use to which the property is to be put by the purchaser (144.030).

■ The "use tax" has been characterized as " ' . . . a levy on the privilege of using within the taxing state property purchased outside the state, if the property would have been subject to the sales tax had it been purchased at home.' " *Southwestern Bell Telephone Co. v. Morris,* 345 S.W.2d 62, 66 (Mo. banc 1961), 85 A.L.R.2d 1033, 1039. It is not a tax on the property itself, but rather on the privilege of buying or selling the property. *Sullivan v. United States,* 395 U.S. 169, 175, 89 S.Ct. 1648, 23 L.Ed.2d 182.

■ In *Southwestern Bell v. Morris, supra,* this court considered the use tax act in depth and clearly demonstrated that the primary function of a use tax is to complement the sales tax, to supplement and protect the sales tax, to complement the sales tax by creating equality of taxation of purchasers on use of property purchased outside the state which cannot be reached as sales because of the commerce clause of the federal constitution.

With respect to exemption, this court in *Southwestern Bell* said at 67–68: "In the light of these principles it is not surprising to find the Illinois Supreme Court ruling directly that the Use Tax Act 'is designed to complement and to protect the tax imposed upon the occupation of selling at retail [sales tax] iand the validity of its exemptions is to be determined in the light of that purpose.' *(Emphasis supplied.)* Turner v. Wright, *11 Ill.2d 161, 142 N.E.2d 84, 89. We are in complete agreement with this holding."*

■ The court has held supra, in this case, that the Association is not entitled to a refund of sales taxes paid by IBM on sales of property to the Association which were subject to the sales tax law. The Association's claim of exemption from sales taxes is premised upon the same statute, section 148.520, *supra,* that the use tax exemption is claimed. Tax exemption provisions are to be strictly construed against the party claiming the exemption. *Mississippi River Fuel Corporation v. Smith,* 350 Mo. 1, 164 S.W.2d 370, 377 (1942).

■ It begs credulity to believe the Missouri legislature intended to relieve purchases made by an association from out-of-state merchants from the compensating use tax but to require that sales made by in-state merchants to an association be subject to the sales tax and thereby give a substantial competitive advantage to out-of-state merchants over resident merchants. The strong language of this court in *Southwestern Bell v. Morris, supra,* that exemptions from the use tax are to be determined in the light of the purpose of the use tax and the recognition that the use tax was designed to complement the sales tax belies a construction of the law which would extend the exemption provisions of section 148.520 to the use tax but not to the sales tax.

The instant case involves exemption provisions of a statute (148.520) other than the statute imposing the tax (144.610). In 68 Am.Jur.2d, Sales and Use Taxes, sec. 101, p. 149, it is stated: "Whether exemption from imposition of a sales tax may be claimed by virtue of exemption provisions of statutes or ordinances other than those imposing the sales tax (usually earlier statutes) involves an application to this sphere of inquiry of general rules and principles governing interpretation of tax exemptions. Applying such principles, the few cases in which the precise question has been considered are in accord as to the result reached, and, though differing slightly in the reasons given as the basis for their conclusions, have uniformly held that sales taxes were not within the exemption provisions of other statutes imposing a different tax." This statement is borne out in the cases annotated at 1 A.L.R.2d 465, "Sale or Use Tax Exemptions", and subsequent cases.

In *Oxford v. Housing Authority of City of Barnesville,* 104 Ga.App. 797, 123 S.E.2d

175, 176 (1961), the housing authority sued for refund of sales and use taxes paid by it claiming to be exempt by reason of Code Ann. sec. 99–1132 (Ga.L.1937, pp. 210, 230), which provides in part: "The property of an authority is declared to be public property used for essential public and governmental purposes and not for purposes of private or corporate benefit and income, and such property and an authority shall be exempt from all taxes and special assessments of the city, the county, the State or any political subdivision thereof." The court held, loc. cit. 177, the Georgia sales and use tax to be " . . . 'all-inclusive, covering everything from the cradle to the grave. Exemptions are the rare exception.' . . . This comprehensiveness extends to persons who are made taxpayers by the act as well as to those who are defined as "persons" under the act, . . . which, we have determined, includes the Housing Authority in the instant case. We cannot say that the legislature, in 1937 when it enacted Code Ann. § 99–1132 (Ga.L.1937, pp. 210, 230), intended to exempt the Housing Authority from the provisions of the sales and use tax act, which was not enacted until 1951. Under the ruling of *Thompson v. Atlantic Coast Line R. Co.,* 200 Ga. 856, 38 S.E.2d 774, we find it necessary to hold that the sales and use tax provisions apply to the Housing Authority for the reason that the sales and use tax law was enacted subsequent to the exemption statute (Code Ann. § 99–1132), and that the sales and use tax law is an all inclusive act which includes the Housing Authority as a taxpayer, *since no provision appears in the sales and use tax act which excludes the Housing Authority.*" (Emphasis added.)

In *Security Life and Accident Company v. Heckers,* 177 Colo. 455, 495 P.2d 225 (Colo. banc 1972), two insurance companies sued for refunds of sales and use taxes paid by them. Their claim was based upon section 72–1–14(1)(a), originally enacted in 1907 and amended in 1965, which imposed a tax of 2¼% on gross premiums and by subsection (1)(c) thereof provided: "The taxes aforesaid shall constitute all taxes collectible under the laws of this state against any such insurance companies, and no other occupation tax or other taxes shall be levied or be collected from any insurance company by any county, city or town within this state, but this chapter shall not be construed to prohibit the levy and collection of state, county, school and municipal taxes upon the real and personal property of such companies." [1]

The Colorado Supreme Court in *Security Life and Accident Company,* supra, denied the claimed exemption, saying at 227: "At the time the sales and use tax legislation was passed, the legislature was aware of the existence of Section 72–1–14(1)(c) and in spite of that knowledge, sales and use taxes were imposed on *all* sales and purchases of property at retail; upon telephone and telegraph services; for gas and electric service; upon meals, food and public accommodations. The provisions for exemptions of certain commodities in the Sales and Use Tax Act do not cover the kinds of purchases here stipulated to, nor do the insurance companies fall within the classifications of the entities exempted under the Act. Sections 138–5–14, 138–5–34."

The Supreme Court of Connecticut refused to apply the provisions of an "in lieu of all other taxation" statute so as to relieve the Connecticut Light & Power Company from sales and use taxes on certain transactions in *Connecticut Light & Power Co. v. Walsh,* 134 Conn. 295, 57 A.2d 128, 1 ALR2d 453 (1948). There the court pointed out that the sales and use tax acts themselves provided for certain exemptions and applied the principle that "the express mention in a statute of one exemption precludes reading others into it", and "[h]ad the General Assembly intended such a result [exemption], it could easily have broadened the provision to exempt public utility companies from the imposition of the use tax." 57 A.2d 131.

1. Missouri also has similar "in lieu" of statutes, reference stock insurance companies (sec. 148.-320), banks (sec. 148.030), farmers' cooperative credit associations (sec. 148.540), and perhaps others.

The Missouri use tax law is similar to Georgia, Colorado, Connecticut, and other states, and is an all inclusive act which provides specifically for the exemptions to that particular tax. Those exemptions do not include savings and loan associations nor any of the other entities mentioned supra within its exemption provisions. This court will not read into the use tax act exemptions which do not clearly appear therein. Had the legislature intended to exempt savings and loan associations from the use tax, it could, and we believe would, have declared such an intent in the act itself or specifically so provided in section 148.520, the "in lieu" taxing statute applicable to savings and loan associations.

In *Santa Fe Downs, Inc. v. Bureau of Revenue,* 85 N.M. 115, 509 P.2d 882 (1973), the court held the New Mexico "in lieu" of other taxes statute relieved the taxpayer of sales and use taxes. But there the "in lieu" act specifically exempted race track licensees from " . . . further excise . . taxes levied by the state, . . . " (Emphasis ours.) The New Mexico court, therefore, held that the race track licensee was literally within the exemption provision. In the instant case there is no specific or literal exemption for savings and loan associations found in either the sale and use tax statutes or in section 148.520.

As noted supra, the use tax is so interrelated to the sales tax that the exemption from the use tax must be determined in the light of the purpose of the compensating use tax act. *Southwestern Bell v. Morris, supra; Turner v. Wright, supra.* The court has considered cases cited by the Association but does not find them persuasive.

The court holds that a savings and loan association is not exempt from the compensating use tax law.

The last issue is whether the Association is entitled to retain 2% of the *sales* taxes paid as reflected in claims Nos. 9 and 10 supra under the provisions of section 144.140 which provides: "From every remittance to the director of revenue made on or before the date when the same becomes due, the person required to remit the same shall be entitled to deduct and retain an amount equal to two percent thereof."

Section 144.080 requires the seller (not the purchaser) to remit the sales taxes to the Director of Revenue. Section 144.021 imposes the primary burden of the sales tax on the seller with certain exemptions not relevant to this case.

Section 144.210 provides in part, "Exemption certificates signed by the purchaser or his agent shall be required to be kept by the seller as evidence for any exempt sales claimed; except, that when a purchaser has purchased tangible personal property or services sales tax free under a claim of exemption which is found to be improper the director of revenue may collect the proper amount of tax, interest and penalty from the purchaser directly. Any tax, interest or penalty collected by the director from the purchaser shall be credited against the amount otherwise due from the seller on the purchases or sales where the exemption was claimed."

It is clear that the entire tenor of the sales tax law is to impose the obligation to remit the tax on the seller. It does not impose the obligation of remitting sales taxes on the buyer. The furnishing of an exemption certificate to a seller by a buyer constitutes a *claim* by the buyer that the sale is exempt from the tax. If the claim is found to be improper, the seller remains liable for the tax but the Director may proceed against the buyer. If the Director collects the tax from the buyer, then the seller is entitled to a credit against the amount due from the seller on that purchase. The 2% deduction is allowable only when the person required to remit the taxes does so on or before the date the taxes are due.

The purpose of allowing the retention of 2% of the tax due was to compensate the seller who is required, as a part of his regular course of business, to collect sales tax from a buyer, keep records, and make remittance to the Director, all of which could increase the seller's cost of doing busi-

ness. It was not the primary purpose of section 144.140 to give a tax reduction simply because the tax was paid when due although the deduction may very well encourage prompt payment.

The court holds that the phrase "person required to remit the same" in section 144.-140 means the seller, not the buyer, because it is the seller who is required by the other provisions of the sales tax law to remit the taxes to the Director.

The Association is not entitled to deduct 2% from the sales taxes due on claims Nos. 9 and 10.

The judgment of the circuit court is reversed and the cause remanded with directions to enter a judgment disallowing the claims of Farm & Home Savings Association for refund of sales and use taxes and decreeing that said Association is not entitled, as a purchaser, to the 2% deduction provided for in section 144.140.

HOLMAN, P. J., concurs.

DONNELLY, J., concurs in result.