**NORWIN G. HEIMOS GREENHOUSE, INC., Appellant,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Respondent.**

No. 68265.

Supreme Court of Missouri, En Banc.

Feb. 17, 1987.

Rehearing Denied March 17, 1987.

C. Michael Bakewell, Morris E. Stokes, John C. Hannegan, Tracy L. Mathis, Louis A. Robertson, St. Louis, for appellant.

William L. Webster, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

BILLINGS, Judge.

Appellant Norwin G. Heimos Greenhouses, Inc., seeks a refund of the sales tax it paid on purchases of water, electricity, and natural gas used in its business operations. The issues are whether appellant, as a purchaser, has standing to request a refund of sales taxes pursuant to § 144.190, RSMo 1984, and, if so, whether appellant is an agricultural consumer, and, as such, not a domestic, commercial, or industrial consumer subject to sales tax on the purchase of water, electricity, and natural gas, pursuant to § 144.010.1(8)(b), RSMo 1986. The Court determines that appellant has standing to request the refund, that appellant's utility purchases were not subject to sales tax, and that appellant is entitled to a refund.

Appellant is a Missouri corporation headquartered in Sunset Hills, Missouri. It operates four greenhouses, located in St. Louis County, at which it raises vegetable and flower plants for sale to retail establishments in Missouri, Illinois, and Southwest Indiana. In its greenhouses, appellant controls the temperature to the plants by heating units which are fired by natural gas and thermostatically controlled by electricity. Appellant also supplies water to the plants and for the necessities of its employees.

On March 3, 1982, appellant applied to the Respondent Director of Revenue (Director) for a refund of the sales tax it paid from January 1, 1980 to December 31, 1981 on purchases of water, electricity, and natural gas for the greenhouses. Appellant had paid sales tax on these purchases to the State of Missouri, the City of Sunset Hills, and the County of St. Louis. All of these sales taxes were collected by the Director. The parties have stipulated that the amount of sales taxes paid on the purchases of these utilities by appellant during the period for which a refund is requested is $20,604.85. Of this amount, $18,161.35 was paid within the two years immediately prior to the date on which the application for refund was filed and $2,443.50 was paid more than two years before the filing of the application for refund. The Department of Revenue denied any refund to appellant. Appellant sought review of this denial of refund before the Administrative Hearing Commission, and from an adverse ruling there, appeals to this Court.

The initial question is whether appellant has standing to request a refund of sales taxes. Section 144.190 provides the exclusive remedy for recovery of sales tax. *Charles v. Spradling*, 524 S.W.2d 820, 823 (Mo. banc 1975). Section 144.190.2 provides in relevant part:

> If any tax ... has been erroneously ... collected, ... such sum shall be credited on any taxes then due from the person under sections 144.010 to 144.510, and the balance ... shall be refunded to the person, but no such credit or refund shall be allowed unless duplicate copies of a claim for refund are filed within two years [1] from date of overpayment.

In addition, the Director, pursuant to § 144.270, RSMo 1986, has promulgated a regulation concerning refunds. This regulation, 12 CSR 10–3.520(1) states:

refund of sales taxes paid in 1980 and 1981.

---

1. The extension of this statute of limitations to three years in 1986 is irrelevant in this suit for a

The seller whose sales tax account has been credited the sales tax is the person who is to request a refund or credit. No other person may make a refund request to the Department of Revenue. Persons who make erroneous payment to a seller should seek their monies back directly from the seller.

The statute, by its terms, does not restrict the right to make a request for refund to sellers alone. The Director seeks to justify his regulation so restricting the right to request refunds by citing to § 144.021, RSMo 1986, which provides that "[t]he primary tax burden [of the sales tax] is placed upon the seller." Moreover, in *Fabick and Co. v. Schaffner*, 492 S.W.2d 737, 743 (Mo.1973), this Court held that the sales tax imposed by Chapter 144 is a gross receipts tax whose burden is imposed upon the seller. Furthermore, the requirement of § 144.060, RSMo 1986, that purchasers pay the amount of the tax to the seller does not alter the legal nature of the tax as a tax upon sellers. *Farm and Home Savings Ass'n. v. Spradling*, 538 S.W.2d 313, 316 (Mo.1976). In other words, the taxpayer is the seller, not the purchaser. The Director's interpretation of § 144.190, as evidenced by his regulation, appears to be that only the legally burdened taxpayer, hence only the seller, may request a refund.

The Court finds the regulation restricting the right to request refunds to sellers, 12 CSR 10–3.520(1), to be invalid because it is an unreasonably crabbed interpretation of and plainly inconsistent with the terms of § 144.190. *See Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo. banc 1972). Under the statute, a "person" may request a refund. Section 144.010.-1(5), RSMo 1986, defines person to include "*any* individual, firm, copartnership, [or] corporation." (Emphasis added.) Had it intended to restrict the right to request refunds to sellers, the legislature could easily have done so by using the word "seller" in § 144.190. "Seller" is used in numerous other places in the sales tax statutes. By inserting the general word "person" into § 144.190, however, rather than the more restrictive word "seller", the legislature ev-

idently intended to allow anyone burdened, either legally or otherwise, by the Director's collection of sales tax to request a refund. Although the legal burden of the sales tax is not on the purchaser, the economic burden is. For example, § 144.080, RSMo 1986, requires the seller to collect the sales tax from the purchaser. Also, § 144.060 requires the purchaser to pay the sales tax to the seller or else suffer criminal sanctions. As an economically burdened entity, the purchaser is a "person" with a right to request a refund pursuant to § 144.190.

Appellant's first argument on the merits is that its purchases of electricity are specifically exempted from sales tax by § 144.-030.2(12), RSMo 1986. This statute provides an exemption from sales tax for

> Electrical energy used in the actual primary manufacture, processing, compounding, mining or producing of a product, or electrical energy used in the actual secondary processing or fabricating of the product, if the total cost of electrical energy so used exceeds ten percent of the total cost of production, either primary or secondary, exclusive of the cost of electrical energy so used....

Appellant contends that its production of flower and vegetable plants for sale to retailers is primary production within the meaning of this exemption. Even assuming this contention to be correct, however, appellant can obtain no exemption under this provision. The burden of proving entitlement to the sales tax exemption was upon appellant. Section 621.050.2, RSMo 1986. Appellant failed to meet this burden because it presented no evidence that its total cost of electricity exceeded ten percent of its total cost of primary production. Appellant's assertion that this ten percent requirement applies only to the exemption for electrical energy used in secondary production and not to the exemption for electrical energy used in primary production is incorrect given the clause "either primary or secondary" immediately following the statement of the ten percent requirement.

Appellant's second argument on the merits is that it is an agricultural consumer

and that no sales taxes on the sale of water, electricity, and natural gas to agricultural consumers have been authorized by the legislature. Taxes may be imposed by Missouri or its political subdivisions only when the taxes are authorized by the legislature. Mo. Const. art. X, § 1.

Section 144.020, RSMo 1986, imposes a sales tax upon sales at retail. Section 144.010.1(8)(b), RSMo 1986, defines "sales at retail" to include:

> Sales of electricity, electrical current, water and gas, natural or artificial, to domestic, commercial or industrial consumers . . . .

Section 144.020.1(3), RSMo 1978, the statute in effect during the period for which appellant is seeking a refund, specifically imposed

> A tax equivalent to three percent of the basic rate paid or charged on all sales of electricity or electrical current, water and gas, natural or artificial, to domestic, commercial or industrial consumers . . . .[2]

Missouri cities and counties have also been authorized to impose sales taxes, but only upon sales that are subject to the state sales tax. *See* §§ 66.600.2, 67.505.3, 94.510.2, 94.605.2, 94.705.3, RSMo 1986. Additionally, Missouri imposes a sales tax for conservation purposes upon sales at retail as defined in § 144.010.1(8). *See* Mo. Const. art. IV, § 43(a).

Given the wording of §§ 144.010.1(8)(b) and 144.020.1(3), the legislature has authorized sales taxes upon the sale of utilities only if the purchaser is a domestic, commercial, or industrial consumer. The parties agree that appellant is neither a domestic nor an industrial consumer. Thus the dispute hinges upon whether or not appellant is a commercial consumer. Appellant contends that it is an agricultural consumer and, as such, is in a class separate and independent from the class of commercial consumers. Since no sales tax is authorized upon the sales of utilities to members of the independent class of agricultural consumers, appellant concludes, no such sales tax can be or should have been collected by the Director.

The Director's counterargument is that even if appellant is considered an agricultural consumer, such consumers are a subclass of commercial consumers and therefore subject to sales taxes on their purchases of utilities. As evidence that the legislature did not intend to create a separate class of agricultural consumers, the Director notes § 144.030.2(22), RSMo 1986. This section exempts from sales tax "all sales of . . . natural gas [or] electricity . . . used exclusively for drying agricultural crops." The Director contends that this exemption would be superfluous if the legislature had intended that the sale of utilities to agricultural consumers not be taxed. It is a general rule of statutory construction that the legislature will not be presumed to have included superfluous language in a statute. *State v. Smith*, 591 S.W.2d 263, 266 (Mo.App.1979). The Director misconstrues the exemption in § 144.030.2 (22). The exemption is for a particular *use* of natural gas and electricity. Appellant argues that it is not subject to sales tax on purchases of utilities because it falls into a particular *class* of consumers. Any class of consumers, whether or not generally subject to sales tax on utility purchases, could use natural gas or electricity to dry agricultural crops and thereby qualify for the use exemption. Such a use is not restricted just to agricultural consumers. Thus, the exemption in § 144.030.2(22) would not be superfluous even if the legislature intended not to tax agricultural consumers on utilities purchases.

The question remains as to whether or not agricultural consumers are in a class separate from commercial consumers. In *King v. Laclede Gas Co.*, 648 S.W.2d 113, 115 (Mo. banc 1983), this Court refused to interpret commercial, as used in the statute here in issue, in its broadest scope, i.e., that which has profit as a primary aim. Rather, the Court chose to read "commercial" as

---

**2.** The current version of § 144.020.1(3) is identical to the quoted version, except that the tax rate has been increased to four percent.

pertaining only to the buying, selling, or exchanging of commodities and to operations which are an integral part thereof. The *King* decision aids in the decision of this case in that it establishes that "commercial" is not to be construed broadly. *King's* particular interpretation of what "commercial" is, however, is of little help when the question, as it is here, is what distinct classes of consumers are not domestic or commercial or industrial consumers. Classes of consumers that are not domestic, commercial, or industrial do exist. If the legislature had not so intended, it would have eliminated these three adjectives and simply have imposed the tax on sales of utilities to consumers.

There is no indication in the sales tax statutes of which consumers are not domestic, commercial, or industrial. Other statutes, however, do suggest that the legislature considers agricultural interests as belonging in a class separate from commercial interests. For instance, in the recent revision of the property tax statutes, real property is subdivided into three subclasses: (1) residential property, (2) agricultural and horticultural property, and (3) utility, industrial, commercial, and railroad property. Section 137.016.1, RSMo 1986. Agricultural and horticultural property is to be assessed at a lower percentage of true value than the other two subclasses. Section 137.115.5, RSMo 1986. These statutes demonstrate that the legislature has distinguished between the agricultural and the commercial in revenue statutes and that the legislature has singled out the agricultural for favorable treatment. Furthermore, under Missouri's Employment Security Law, the word "employment" does not include service performed by an individual in agricultural labor. Section 288.034.12(1), RSMo 1986. Hence, employees of agricultural labor are singled out from other employees, including commercial employers, and are not required to make contributions to the unemployment compensation fund.

The legislature's distinction between the agricultural and the commercial in the property tax statutes and the Employment Security Law is compelling evidence that the legislature meant for a similar distinction to be made with respect to the sales tax statutes. The rule of statutory construction that tax statutes are to be strictly construed in favor of the taxpayer and against the taxing authority, *Brown Group, Inc. v. Administrative Hearing Comm'n,* 649 S.W.2d 874, 881 (Mo. banc 1983), must also be given due consideration. The Court concludes that the legislature did intend that agricultural consumers be considered as a class separate from commercial consumers. As a separate class, there is no authority under §§ 144.010.-1(8)(b) and 144.020.1(3) to tax the sales of utilities to agricultural consumers. Such a benefit to agricultural consumers is in line with the favorable treatment agricultural property receives under the property tax statutes and agricultural employers receive under the Employment Security Law.

This Court further concludes that appellant is an agricultural consumer of utilities. Appellant operates greenhouses in which flower and vegetable plants are raised. In *St. Louis Rose Co. v. Unemployment Compensation Commission,* 348 Mo. 1153, 1157, 159 S.W.2d 249, 250–51 (1941), the Court decided that greenhouse employees are engaged in agricultural labor. Because the labor of appellant's employees is agricultural, appellant's product is also agricultural. As an agricultural producer, appellant's consumption of water, electricity, and natural gas in its greenhouses, is agricultural consumption. As an agricultural consumer, appellant's purchases of water, electricity, and natural gas for use in its business operations are not subject to sales tax.

The sales taxes collected on the sales of water, electricity, and natural gas to appellant were collected erroneously. On March 3, 1982, appellant filed a request for a refund of such taxes collected from January 1, 1980 to December 31, 1981. Section 144.190.2, RSMo Supp.1984, the statute in effect at the time appellant requested the refund, permitted the refund of erroneously collected sales taxes if a proper claim for refund was filed within two years from the date of overpayment. Therefore, appellant

is entitled to a refund for the taxes collected from March 3, 1980 to December 31, 1981. The amount of the sales tax collected during this period was stipulated by the parties to be $18,161.35.

The decision of the Administrative Hearing Commission denying appellant a refund of sales taxes is reversed.

HIGGINS, C.J., and DONNELLY, WELLIVER and RENDLEN, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

ROBERTSON, J., dissents and concurs in separate dissenting opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting.

I agree that the appellant has standing to seek a refund of sales taxes paid by it to the utilities, and by them to the State. I disagree with the conclusion that the appellant is an agricultural consumer, and so would affirm the decision of the Administrative Hearing Commission.

The principal opinion cites *King v. Laclede Gas Co.*, 648 S.W.2d 113, 115 (Mo. banc 1983) for the proposition that the term "commercial" within § 144.020.1(3), RSMo 1978, is not to be construed broadly. In *King*, however, the Court distinguished "mercantile" (the actual buying and selling of commodities) from "commercial" (the larger aspects of operation of exchange) and chose not to follow the restricted reading of "commercial" previously used in *State ex rel. Kansas City Power & Light Co. v. Smith*, 342 Mo. 75, 111 S.W.2d 513 (banc 1938) and *Kansas City Power & Light Co. v. Kansas City Public Service Co.*, 342 Mo. 45, 111 S.W.2d 516 (banc 1938). (*Kansas City Power* held that "commercial" pertains only to the buying, selling, or exchanging of commodities). *King*, 648 S.W.2d at 115. In justifying its broader interpretation of "commercial", the Court noted that the term cannot be used "so narrowly as to preclude a common sense understanding of the operations of this taxpayer" nor to reject the plain meaning of the statute. *Id.* at 115. Here the principal opinion departs from the underlying reasoning of the *King* holding that operations integral to the selling of commodities are "commercial" in nature.

Contrary to the principal opinion's assertion, the *King* decision does assist in determining which class of consumers are "commercial" and which are not. To decide which consumers are not "commercial", one must establish the meaning of "commercial," and what constitutes a "commercial" use. Then it can be determined which consumers fall outside the ambit of that definition. *King* provided direction in both respects.

In *King*, the taxpayer requested an exemption on the grounds that the electricity was used in a non-commercial, non-domestic, and non-industrial manner. Because the electricity was used as an integral part of the taxpayer's commercial activity, the taxpayer was found non-exempt and therefore, a commercial consumer within § 144.020.1(3), RSMo 1978. *Id.* at 114–115.

The appellant used its water, electricity and natural gas in the same way that Laclede did in *King*. There I noted in a concurring opinion that "natural gas is the taxpayer's product, and, in furnishing gas to its customers, the taxpayer is engaged in the selling of commodities." *Id.* at 117. Storing the electricity was an integral part of Laclede's commercial operation, and power furnished to accomplish this end was for a "commercial" use. *Id.* at 117. Here the utilities were used as an integral part of Heimos' operation—to raise the vegetables and flower plants. In furnishing the plants to its customers, retail establishments, Heimos Greenhouse was engaged in a commercial operation, and can be classified a "commercial" consumer of utilities, subject to the sales tax.

The principal opinion also relies on the Missouri Employment Security Law and *St. Louis Rose Co. v. Unemployment Compensation Commission*, 348 Mo. 1153, 159 S.W.2d 249 (1941) to support the conclusion that agricultural consumers are not subject to sales tax.

Under Missouri's Employment Security Law the term "employment" does not in-

clude service performed by an individual in agricultural labor. Section 288.034.12(1), RSMo 1986. The term "agricultural labor" means renumerated service performed on a farm, which includes greenhouses used primarily for the raising of horticultural commodities. Section 288.034.12(1)(a)(e), RSMo 1986.

This statute contains a specification which is not found in the sales tax statutes. Section 288.034.12(1)(b), RSMo 1986. It also centers on the nature of the particular employer's duties, and not on the nature of the business. The application of the exemption, furthermore, is limited to the smaller agricultural employers. Section 288.034.12(1)(b), RSMo 1986.

Although the principal opinion finds that the legislature's distinction between "agricultural" and "commercial" in the unemployment statute is compelling evidence that a similar distinction was intended in the sales tax statutes, logic would indicate a contrary conclusion. The statutes deal with separate subject matter. It is only reasonable to assume that the legislature would have excluded greenhouses specifically, if it had so intended.

The principal opinion stretches the holding of *Saint Louis Rose Co.* beyond reasonable bounds to justify the conclusion that appellant is an agricultural consumer. There we held that, for unemployment compensation purposes, greenhouse employees are engaged in agricultural labor. *Id.* 159 S.W.2d at 251. When the case was decided, the unemployment compensation statute did not specifically include horticultural commodities within the "agricultural labor" exemption. *Id.* at 251. From this limited holding the principal opinion concludes that, because the employees' labor is considered agricultural, the appellant's product is agricultural. Because the product is found to be agricultural, the use of the utilities is held to be agricultural consumption, and, because the appellant's consumption is agricultural, appellant is an agricultural consumer and exempt from the sales tax statute. Absent from this circular analysis is any consideration of whether the utilities are used as an integral part of the appellant's activities and whether, in furnishing the plants and vegetables to retail establishments, the appellant is engaged in the sale of commodities. The electricity, gas, and water used to grow the appellant's product are an integral part of the operation which, according to *King*, would be a "commercial", and not an "agricultural", use or consumption.

I believe that the appellant's operations in growing plants for sale to consumers are not agricultural, in any accepted sense of the term. The operation is fully as commercial as any mercantile business. The decision should be affirmed.